## Richmond.

# ELLERSON FLORAL COMPANY v. CHESAPEAKE AND OHIO RAILWAY COMPANY.

### March 1, 1928.

1. ACT OF GOD—*Definition.*—"An act of God" as the term is known to the law, is such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected.

2. ACT OF GOD—*Flood—Case at Bar.*—The instant case was an action against a railroad for damage to plaintiffs by flooding their greenhouse, due as plaintiffs alleged to an insufficient culvert. The flooding followed the heaviest rain on record during more than fifty years. During a preiod of two and a half hours over seven inches of water fell. Since these facts were not in dispute, the court might well have held that it was "an act of God," but it also appeared that the greenhouse was flooded on two previous occasions. In other words the record showed the culvert was not even sufficient to carry off a rain-fall of unusual volume· and it could not be said as a matter of law that had it so been built it would not have saved the plaintiffs harmless in the flood in question. Unusual rains are to be expected at times.

3. NUISANCES—*Floods—Obstructions which, with Certainty, will Cause Flood—When Statute of Limitation Begins to Run.*—Obstructions which, with certainty, will cause floods, although at uncertain intervals, constitute permanent nuisances, and the statute of limitation begins to run as to them from the time that their inadequacy is first definitely ascertained.

4. STARE DECISIS—*Opinions of Court—Construction.*—Statements of law in the opinions of courts are to be read in connection with the facts of the case to which they are applied.

5. NUISANCES—*Floods—Obstructions which, with Certainty, will Cause Flood—When Statute of Limitations Begins to Run—Case at Bar.*—The instant case was an action by plaintiffs against defendant railroad for the flooding of their greenhouse, due as alleged to an insufficient culvert. The flood in question was in June, 1923. There had been a previous flood in July, 1917. At the time of this previous flood the culvert had been standing twenty years and the greenhouse which was damaged had stood for nine years.

*Held:* That this previous flood was not sufficient to put plaintiffs on notice that other floods would continue to recur with certainty and that the statute of limitation did not begin to run in 1917, and that the instant case was not barred by the statute.

6. DAMAGES—*Verdict of Jury—Uncontradicted Evidence as to Damages—Case at Bar.*—In the instant case the uncontradicted evidence was that the damage suffered by plaintiffs amounted to $1,365.60. The jury's verdict, subject to a demurrer to the evidence, was for $750.00, which verdict was confirmed by the trial court. To this action plaintiffs excepted.

*Held:* That plaintiffs' exception should have been sustained and the judgment should have been rendered for the damages shown beyond peradventure to have been suffered.

7. FLOODS—*Receipts for Damages—Construction of Receipts—Whether Receipts were for Future Claims—Case at Bar.*—The instant case was an action by plaintiffs against defendant railroad for damage for flooding their greenhouse, due as alleged to an insufficient culvert. There had been two previous floods for which the railroad had settled with plaintiffs, and plaintiffs had given receipts in full compromise, settlement, satisfaction and discharge of all claims or causes of action.

*Held:* That the receipts fairly construed were for injuries suffered at the dates of their execution and were not to be regarded as payments for damage which might be suffered after their execution.

Error to a judgment of the Circuit Court of Hanover county, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*B. Rand Wellford* and *Carter, Crawford & Redd,* for the plaintiffs in error.

*D. H. Leake* and *Leake & Spicer,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Plaintiff is a partnership whose business is raising bulbs, etc. Its hot houses are located in a ravine through which runs a small stream with a watershed approximating fifty acres.

Across this ravine is a fill twenty-two feet high, constructed to carry defendant's roadway. At its bottom is a culvert thirty-six inches in diameter, built to drain away unusual accumulations of water and to care for that ordinarily to be expected. In June, 1923, there was a very heavy rain in that vicinity. This culvert was inadequate, the water was dammed back, and as a consequence the injuries to growing plants, etc., set out in plaintiff's motion were suffered. That motion charges the defendant with negligently building this fill, without providing and maintaining, free from obstruction, an adequate waterway. The defendant pleaded the general issue, and filed a special plea setting up the five year statute of limitation (Code 1924, section 5818). In due course the case was submitted to a jury. There was a demurrer to the evidence, and subject to this demurrer the jury returned into court a verdict for the plaintiff in the sum of seven hundred and fifty dollars ($750.00). The demurrer was sustained, and the action dismissed, and this judgment of the trial court is now before us on a writ of error.

[1] One of the defenses relied upon is that the rain on the occasion of the injury was so unusual as to amount in law to an "act of God." "An act of God," as the term is known to the law, is such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected.

[2] During a period of two and a half hours over seven inches of water fell. It was the heaviest rain on record at the Richmond Weather Bureau Station,

established for more than fifty years. In that time one-sixth of the average rain-fall for the entire year came down. That this was an extraordinary downpour is immediately apparent, and since these facts are not in dispute, the court might well hold that it was an "act of God," but the record also shows that this greenhouse was flooded on two previous occasions, once in August, 1917, and again in August, 1920. In other words this record shows that the culvert was not even large enough to carry off a rain-fall of unusual volume. Had it been so built, we cannot say as a matter of law that it would not have saved the plaintiff harmless in the flood of 1923. Unusual rains are to be expected at times.

[3] It is next said that the five year statute of limitation applies, and in support of this proposition we are cited to many Virginia cases including *Virginia Hot Springs Co.* v. *McCray*, 106 Va. 461, 56 S. E. 216, 10 L. R. A. (N. S.) 465, 10 Am. Cas. 179; *Southern Railway Company* v. *McMenamin*, 113 Va. 121, 73 S. E. 980; *Southern Railway Company* v. *White*, 128 Va. 551, 104 S. E. 865; *City of Portsmouth* v. *Weiss*, 145 Va. 94, 133 S. E. 781; and *Wright* v. *City of Richmond*, 146 Va. 335, 132 S. E. 707, which hold that obstructions which, with certainty, will cause floods, although at uncertain intervals, constitute permanent nuisances, and that the statute begins to run as to them from the time that their inadequacy is first definitely ascertained. With this proposition we have no quarrel.

[4] But all statements of law are to be read in connection with the facts of the case to which they are to be applied.

[5] Here the flood which first occasioned damage was in July, 1917. At that time this culvert had been standing for twenty years, and the greenhouse which

was damaged had stood for nine years.   That is to say, this culvert stood for all this period of time without doing anybody any harm, and so the flood which came at the end of this long period of time was not sufficient to put anyone on notice that other floods would continue to recur with certainty.   There was nothing to show that another period of twenty years might not pass, or another period of even greater duration, before any additional damage was done, or that in fact any additional damage would ever be done.   It is true that there was a second flood in 1920, and it may be that this recrudescence of this trouble within this comparatively short time was sufficient evidence to show that the culvert was in fact a permanent nuisance. If so, the statute would begin to run from this date. On this proposition the court is not in harmony, and so the question here suggested is expressly left open.   It is not necessary to decide it in this case.   If the statute did begin to run in 1920, then the five year period had not elapsed when the instant action was instituted.

[6]  The uncontradicted evidence is that the damage suffered amounted to $1,365.60; the jury's verdict, subject to a demurrer to the evidence, was for $750.00, which verdict was confirmed by the trial court.   To this action plaintiffs excepted, and we think their exception should have been sustained, and that judgment should have been rendered for the damage shown beyond peradventure to have been suffered, namely, for $1,365.60, with interest.   Code, section 6365, and *Blake & Company* v. *Smith*, 147 Va. 960, 133 S. E. 685.

[7]  For the damage occasioned by the flood of 1917 the railway paid $250.00, the receipt therefor being—

"Received of The Chesapeake and Ohio Railway Company the sum of two hundred and fifty 00/100 dollars, in full compromise, satisfaction and discharge

of all claims or causes of action, whatsoever, and particularly of all claims or causes of action arising out of the above account.

"Witness my hand and seal this 28th day of July, 1917.

"ELLERSON FLORAL CO. (Seal)
"FREDERICK WOLSTENHOLME."

The claim for damages arising out of the flood of 1920 was also settled out of court, the receipt given in that instance being:

"Received of The Chesapeake and Ohio Railway Company the sum of three hundred dollars, in full settlement, satisfaction, release and discharge of all claims or causes of action whatsoever, and particularly of all claims or causes of action arising out of the above account.

"Witness my hand and seal this 28th day of January, 1921.

"McNEILL & BREMNER,
"ELLERSON FLORAL CO.,
"By E. WOLSTENHOLME."

These receipts, which are substantially alike, indicate that the railway was of opinion, when they were taken, that the damage inflicted in each instance stood alone, and they do not show that they were regarded as payments for damages which might be suffered after their execution. Fairly construed, they are for damages for injuries suffered at the dates of their execution.

Since we have reached the conclusion that the plaintiff is entitled to a judgment for $1,365.60, it is unnecessary to consider objections made to other rulings of the trial court. Its judgment must be reversed, and this court will now enter such judgment as it should have entered in the beginning.

*Reversed.*