# D.J. Cooper, et al.

## v.

# Corrie Horn, et al.

Record No. 931322

September 16, 1994

Present: All the Justices

*Evans B. Jessee* for appellants.

*Steven L. Higgs (Kenneth C. King, Jr.; Frederick T. Schubert, II; King & Higgs*, on brief), for appellees.

JUSTICE KEENAN delivered the opinion of the Court.

In this case involving property damage resulting from the failure of an earthen dam, we consider whether the trial court erred in instructing the jury on the issue of trespass and the doctrine of *res ipsa loquitur*, and in removing an "act of God" defense from the case.

In consolidated actions at law, Corrie Mae Horn, Donald Lewis Graybill, and Shirley T. Graybill (the plaintiffs) alleged damage to their real property and structures thereon caused by the discharge of a large volume of water across their land during a rain storm on September 7, 1987. The plaintiffs alleged that their damages were caused by the failure of a dam built and maintained by the appellants, D.J. Cooper and L. Ruth Cooper. Their pleadings included counts alleging trespass and negligence.

The evidence at trial showed that the Coopers operated a trailer park in Bedford County. A stream passed through the trailer park and flowed through adjacent land owned by Horn. After joining with another tributary stream, the water then flowed through land owned by the Graybills.

In the spring of 1987, D.J. Cooper engaged an excavating contractor and supervised construction of an earthen dam, which was built across the stream flowing through his trailer park, to form a pond. Cooper stated that he prepared the ground by laying sections of concrete pipe in the creek bed, and attempted to block the ends of the pipes with dirt. When during the summer it appeared that the pond could be filled only partially, he hired a backhoe operator who dug out part of the dam, allowed the pond to empty, and removed the pipes. Cooper then had the excavating contractor return to rebuild the dam, replacing and compacting the dirt that had been removed when the pond was drained.

The plaintiffs introduced evidence to show that the dam was inadequately constructed. Neighbors who saw the dam being built testified that the materials used in the dam included "junk, trash," "appliances, old trees, limbs," "car parts," and "parts of trailers."

Cooper and the excavating contractor denied that anything but "dirt and rock taken off [the] property" was used in building the dam. They admitted, however, and a photograph clearly showed, that trees and grass had been planted and were growing in the fill material forming the dam.

Richard A. Willett was qualified as an expert in civil engineering and testified on behalf of the plaintiffs. Willett explained that a "spillway" is required to carry off any water that exceeds the normal flow of water through a dam. He calculated that the spillway of Cooper's dam had a capacity of 150 cubic feet per second. However, the runoff generated through Cooper's pond by a "two-year storm" would be 221 cubic feet per second, exceeding the dam's runoff capacity. Willett further explained that a "two-year storm" is "a storm that has a probability of occurring once in two years."

Willett testified that the presence of foreign materials, including roots and living trees, would affect the imperviousness and strength of a dam. He also stated that when the dam was breached in order to remove the pipes, it should have been rebuilt "from the ground up." Willett explained that a dam is properly constructed by compacting a number of six-inch layers of earth, each of which must be continuously packed "all the way across" the dam before the next layer is added. He stated that, when a trench was dug through the dam, it "sheered the continuity from one side to the other," and, in his opinion, it was not reasonable to attempt to repair the dam simply by replacing the same material that had been taken out. This method, he stated, created a weak point at the place where the trench had been dug, and as a result, the dam was likely to be damaged by flowing water.

During Labor Day weekend in 1987, heavy rains fell for three consecutive days. Data collected at Woodrum Field near Roanoke showed that almost nine inches of rain were recorded over the period, with 6.56 inches recorded on the third day, September 7, 1987. A resident engineer for the Virginia Department of Transportation testified that the heavy rainfall and the resulting high water caused extensive damage to bridges, culverts, and roads in Bedford County.

The testimony showed that on the morning of September 7, 1987, water running through the stream overflowed the top of the Coopers' dam, and the dam "washed out." One witness described looking out a window in his home nearby and observing a sudden "large rush of water, like waves coming in if you were on the beach," "a couple foot of water rushing through there." When he investigated, he saw that the dam had broken. Another witness, who was a tenant on Horn's property, stated that he watched the dam give way in several "chunks" that fell out of the dam at the

point where it had been repaired. He further stated that the greatest rush of water resulted when a very large "chunk" came out of the dam.

The Graybills alleged that, as a result of the flooding, a garage on their property was damaged and had to be torn down, and that their grounds required repairs. Horn claimed that she was required to repair her well, pump, and grounds. At the conclusion of the trial, the court entered judgment for the plaintiffs on the jury's verdict. The jury awarded the Graybills $6,826.20 compensatory damages, and it awarded Horn $3,565 compensatory damages and $2,700 punitive damages.

On appeal, the Coopers first contend that the trial court erred in instructing the jury on the doctrine of *res ipsa loquitur*. The instruction at issue, to which the Coopers objected, stated:

Where the plaintiffs have proved by the greater weight of the evidence that: (1) a flood of impounded water has occurred which normally would not have occurred if the defendants ha[d] used ordinary care; and (2) the means or instrumentality causing the flood of impounded water was under the exclusive control of the defendants; and (3) the defendants have, or should have had, exclusive knowledge of the way the dam was used; you may, but are not required to, decide that the defendants were negligent.

■ We agree with the Coopers that the doctrine had no application to the facts of this case, and that granting the instruction was reversible error. *Res ipsa loquitur* "is an evidential presumption sometimes resorted to in the absence of evidence, but it is not to be applied when evidence is available. 'The doctrine rests upon the assumption that the *thing* which causes the injury is under the exclusive management of the defendant, and the evidence of the true cause of the accident is accessible to the defendant and inaccessible to the person injured.'" *Logan v. Montgomery Ward & Co.*, 216 Va. 425, 429, 219 S.E.2d 685, 688 (1975) (quoting *Peters v. Lynchburg Light & Traction Co.*, 108 Va. 333, 336, 61 S.E. 745, 746 (1908)).

"[I]t is only where the cause of the accident has not been ascertained that a necessity for the application of the doctrine arises. It applies where the injured person is powerless to ascertain the

cause." *City of Richmond v. Hood Rubber Prods. Co.*, 168 Va. 11, 16, 190 S.E. 95, 97 (1937).

■ Here, the plaintiffs did not claim or attempt to show that they were powerless to ascertain the cause of the accident, or that evidence of the cause was accessible only to the Coopers. Instead, the plaintiffs endeavored to prove that the dam was inadequately constructed and improperly maintained, so that it was unable to withstand a heavy rainfall and released a sudden large volume of water over their properties. Thus, the plaintiffs were not entitled to an inference of negligence, but instead had the burden to prove that their damages were proximately caused by the defendants' negligence. *See Norfolk & W. Ry. v. Anderson*, 207 Va. 567, 573-74, 151 S.E.2d 628, 633 (1966).

■ Moreover, the doctrine of *res ipsa loquitur* applies only when "the instrumentality which caused an injury is within the exclusive possession and control of the person charged with negligence." *Danville Community Hosp., Inc. v. Thompson*, 186 Va. 746, 757, 43 S.E.2d 882, 887 (1947). Here, the physical cause of the damage claimed by the plaintiffs was the water escaping from · the dam. Thus, the flood water was one of the instrumentalities causing the damage and the volume of water flowing into the dam from the stream was not a matter that was exclusively within the Coopers' control. *See Eaves v. City of Ottumwa*, 38 N.W.2d 761, 769 (Iowa 1949).

Because the case must be remanded due to this error, we address two other issues raised by the Coopers' assignments of error that are likely to arise upon retrial. First, the Coopers challenge the giving of two jury instructions regarding trespass. They claim that these instructions were inconsistent with other instructions that submitted the case to the jury on a negligence theory, and they argue that it was error to allow the jury to believe that judgment could be entered against them without proof of negligence. We disagree.

In addition to their allegations of negligence, the plaintiffs asserted a separate and distinct cause of action for common law trespass to land (trespass *quare clausum fregit*). This action derives from the "general principle of law, [that] every person is entitled to the exclusive and peaceful enjoyment of his own land, and to redress if such enjoyment shall be wrongfully interrupted by another." *Tate v. Ogg*, 170 Va. 95, 99, 195 S.E. 496, 498 (1938).

■ "[A] trespass is an unauthorized entry onto property which results in interference with the property owner's possessory interest therein." 5 Richard R. Powell, *The Law of Real Property* ¶ 707 (Patrick J. Rohan ed., 1994). Thus, in order to maintain a cause of action for trespass to land, the plaintiff must have had possession of the land, either actual or constructive, at the time the trespass was committed. *Blackford v. Rogers*, 2 Va. Dec. 292, 294, 23 S.E. 896, 897 (1896).

■ In addition, to recover for trespass to land, a plaintiff must prove an invasion that interfered with the right of exclusive possession of the land, and that was a direct result of some act committed by the defendant. Any physical entry upon the surface of the land constitutes such an invasion, whether the entry is "a walking upon it, flooding it with water, casting objects upon it, or otherwise." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 13, at 70 (5th ed. 1984).

■ In this case, the plaintiffs pleaded alternative causes of action for both trespass and negligence. They were entitled to plead alternative theories of recovery, based on claims arising out of the same occurrence, and to have their case submitted to the jury on those alternative theories. Code § 8.01-281(A); Rule 1:4(k); *Fox v. Deese*, 234 Va. 412, 422-23, 362 S.E.2d 699, 705 (1987). Therefore, if their evidence supported a cause of action for trespass to their land, the plaintiffs were entitled to instructions that correctly propounded the law governing that cause of action. *See Bowers v. May*, 233 Va. 411, 413-14, 357 S.E.2d 29, 30 (1987).

We hold that the plaintiffs' evidence was sufficient to entitle them to have the jury instructed on the trespass theory. The plaintiffs presented evidence showing that they were the owners of the land in question, and the Coopers did not dispute the plaintiffs' right to exclusive possession of the land. The plaintiffs further proved an entry on their land from the discharge of a large volume of water from the dam constructed by Cooper, and that this entry was without right, authority, or invitation. Therefore, the trial court did not err in submitting the case to the jury on the alternative theory of trespass to land.

■ We disagree with the Coopers' contention that they could not be held liable for trespass absent proof of negligence. Civil liability may be predicated upon unintentional trespass, *Parker v. Hartford Fire Ins. Co.*, 222 Va. 33, 35, 278 S.E.2d 803, 804 (1981), or upon acts done accidentally, inadvertently, or by mis-

take, *see Barnes v. Moore*, 199 Va. 227, 231, 98 S.E.2d 683, 686 (1957); *Clinchfield Coal Corp. v. Hayter*, 130 Va. 711, 720, 108 S.E. 854, 857 (1921). Although proof of a negligent act may be sufficient to support a civil action for trespass, such proof is not a necessary element of that cause of action.

In *Akers v. Mathieson Alkali Works*, 151 Va. 1, 144 S.E. 492 (1928), this Court rejected the same contention now advanced by the Coopers. In that case, the plaintiff alleged continuing trespass and nuisance, claiming that chemical waste products, known as "muck," had leaked from the defendant's storage basin over the plaintiff's land. Although the defendant argued that "the plaintiff's right to recover depends upon his proving that the injuries to his property were occasioned by the negligence of the defendant," *id.* at 11, 144 S.E. at 495, the Court disagreed and affirmed the imposition of liability without such proof, stating:

> The law requires that every person so use his own property as not to injure the property of another. . . . When defendant permitted the muck to escape from its land and injure land of the plaintiff, without his fault, defendant was liable for the damages sustained by the plaintiff. . . . The loss in such cases must be borne by plaintiff or defendant and it seems just that it fall upon the defendant by whose conduct it was made possible.

*Id.*

In accordance with this principle, we conclude that the trial court did not err in submitting the issue of trespass to the jury without requiring a finding of negligence as an essential element of that cause of action.[1]

The Coopers also have contended that the trial court erroneously granted an instruction removing from the jury's consideration their defense that the heavy rainfall and widespread flooding constituted an "act of God," absolving them from any liability. The Coopers argue that their evidence showed that the weather conditions of September 5-7, 1987, met the definition of an "act of God," which requires "such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected." *Ellerson Floral*

[1] The Coopers have contended only that the instructions concerning trespass were erroneous in that they did not require proof of negligence. Since the Coopers have raised no assignment of error concerning whether the instructions, as given, were adequate to set forth the elements of a trespass cause of action, we do not express an opinion on that issue.

*Co. v. Chesapeake & O. Ry.*, 149 Va. 809, 811, 141 S.E. 834, 835 (1928). Citing the evidence of severe weather and the damage it caused to roads and bridges in the area, the Coopers argue that the trial court should have ruled as a matter of law, or allowed the jury to determine as a question of fact, that the plaintiffs' damages were occasioned by an act of God. We disagree.

▮ Whether an extraordinary flood is an "act of God" is a mixed question of law and fact, and it is for the trial court to determine in the first instance whether, under the law, the defendant has proved the existence of circumstances permitting exemption from liability. *Southern Ry. v. Neal*, 146 Va. 229, 235, 135 S.E. 703, 705 (1926). In this case, we hold that the trial court properly ruled that the defense was inapplicable. "To relieve one of liability because a flood is, in law, an 'act of God,' it must appear that the act of God was the sole proximate cause of the injury." *Id*. at 239, 135 S.E. at 706. Moreover, " 'all human agency is to be excluded from creating or entering into the cause of mischief, in order that it may be deemed an Act of God.' " *City of Portsmouth v. Culpepper*, 192 Va. 362, 367, 64 S.E.2d 799, 801 (1951) (quoting *Friend v. Woods*, 47 Va. (6 Gratt.) 189, 195 (1849)).

▮ Here, although much of the evidence regarding the dam's construction was conflicting, it was uncontradicted that the Coopers allowed trees to grow in the dam, and Willett testified without refutation that the presence of living trees would weaken a dam. Further, Cooper acknowledged that he had rebuilt the dam by replacing the soil that had been removed, which, according to Willett, was not a "reasonable" procedure and would also tend to weaken the dam. Therefore, there was sufficient evidence to allow the court to hold, as a matter of law, that the "act of God" defense was inapplicable because human agency was a cause contributing to the flood damage.

For these reasons, we will reverse the trial court's judgment and remand the case for a new trial in accordance with the principles expressed in this opinion.[2]

*Reversed and remanded.*

---

[2] Because the evidence may be different at a second trial, we do not address the Coopers' remaining assignments of error relating to the sufficiency of the evidence and the propriety of an award of punitive damages in favor of plaintiff Horn.