Present:  All the Justices

JOANN E. LEWIS

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v.  Record No. 960421                November 1, 1996

CARPENTER COMPANY

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
T. J. Markow, Judge

In this tort action, the sole question presented on appeal is whether the trial court correctly refused to apply the doctrine of res ipsa loquitur.

In January 1995, appellant Joann E. Lewis, the plaintiff below, filed this action against appellee Carpenter Company, the defendant below, seeking recovery for personal injuries allegedly sustained as the result of the negligent operation and maintenance of defendant's truck, a tractor-trailer unit.

Upon completion of the plaintiff's case-in-chief during a jury trial, the court sustained defendant's motion to strike the evidence, ruling that the plaintiff had failed to establish a prima facie case of negligence.  The court rejected the plaintiff's contention that res ipsa loquitur should be applied to withstand defendant's motion to strike.  The plaintiff appeals the November 1995 summary judgment in favor of the defendant.

The plaintiff's evidence showed that, on September 9, 1994, near 5:00 p.m., she was operating an automobile southbound in the City of Richmond on Jefferson Davis Highway, and stopped at the intersection with Hopkins Road in obedience to a red traffic signal.  The plaintiff's vehicle was in the left of three southbound lanes.

At the same time, defendant's employee, Prince E. Rich, III, was operating defendant's truck southbound on Jefferson Davis Highway, and stopped in the center lane at the intersection. Both vehicles were "first in line" at the signal.

According to the plaintiff, both vehicles moved forward when the light changed to green. Before the plaintiff's automobile "cleared Hopkins Road," she heard "a loud thump and a warning screamed at her" by a passenger. "She immediately looked over her right shoulder and saw defendant's tractor proceeding but it had become separated from the trailer which was also moving forward barely to her right." Believing the trailer "was angling toward her" and fearing it would strike her vehicle, the plaintiff, "in a panic move," steered hard to her left and accelerated. "In so doing, she testified, she struck the concrete median that was on her left with much force," causing her injuries. There was no contact between the plaintiff's vehicle and defendant's tractor or trailer.

The plaintiff's evidence about the maintenance of defendant's truck was presented solely through defendant's employee Rich, called by the plaintiff as an adverse witness. He testified that early on the day in question he had driven the tractor-trailer unit from defendant's place of business on Jefferson Davis Highway to Baltimore, Maryland, making four deliveries of freight within a 25-mile radius of Baltimore before returning to Richmond in the late afternoon.

Rich described the manner in which he had connected the tractor to the loaded trailer at the defendant's premises before he left Richmond. The employee, with six years' experience in joining tractors and trailers, said the tractor has a part called a "fifth wheel," mounted on the tractor's frame behind the cab. The fifth wheel is a round, flat device containing a "slot" opening to the rear. Built into the fifth wheel is a "locking pin," a heavy steel bar. Mounted on the trailer's leading edge is a vertical "pole" about three inches in diameter.

In order to connect the two pieces of equipment, the tractor was backed against the stationary trailer, which was standing on a "landing gear," causing the trailer pole to fit into the slot of the fifth wheel. The fifth wheel's locking pin, which is "spring triggered," came "across" with an audible "click" and enclosed the trailer pole "like a cage," securing the trailer to the tractor.

After the locking occurred, Rich performed a "series of checks." Air lines were connected and a visual inspection was made to verify that the locking device was properly seated. The trailer's landing gear was "cranked up," the brakes on the tractor were released, and the trailer brakes were left "charged." The tractor was put "in gear" and an effort was made to pull away from the trailer. If the locking "has not been done right," the tractor "will pull right away" from the trailer; if the locking has been properly done, "you can't pull away from

it."  On the day in question, the tractor would not pull away.

Rich further testified that he experienced no difficulty or trouble with the "rig" at any time during the trip to Baltimore and return.  He permitted no one to operate the rig, he carried no passengers, and allowed no one to "do anything with the rig or the connection or the hookup."

Describing the incident in question, Rich testified he travelled about 200 feet southbound from his stopped position at the intersection and heard a noise.  In an "almost panicked reaction," he immediately "shut the tractor down, popped the brakes on it, and jumped straight out the door" because he could see the trailer had "come loose."  The tractor was stopped in the center lane.  He ran back to the trailer, which had stopped "dead" in the center lane about 30 feet behind the tractor.  Rich stated he was "positive" that at the moment he noticed in his rear-view mirror that the trailer was loose, there was no automobile in the lane to his left and no car on or near the median strip.

When Rich reached the stopped trailer, the tractor's fifth wheel mechanism was still locked.  The "stout metal bar" was still in proper locking position and was unbroken.  The employee testified he did not know "how the tractor and the trailer got loose from each other with the [locking pin] still being locked."

Later, another tractor was used to pull the trailer to defendant's place of business because the locking mechanism of

- 4 -

the tractor's fifth wheel would not unlock.  After the Friday incident, the employee embarked on another trip the following Monday using the same tractor and trailer.

On appeal, relying mainly on <u>Virginia Transit Co.</u> v. <u>Durham</u>, 190 Va. 979, 59 S.E.2d 58 (1950), and cases from other jurisdictions, the plaintiff contends the evidence she adduced was sufficient to invoke the doctrine of res ipsa loquitur and to require the trial court to submit the case to the jury.  We do not agree.

Almost 60 years ago, this Court, discussing res ipsa loquitur, said:  "In Virginia the doctrine, if not entirely abolished, has been limited and restricted to a very material extent."  <u>City of Richmond</u> v. <u>Hood Rubber Prods. Co.</u>, 168 Va. 11, 17, 190 S.E. 95, 98 (1937).

The restricted nature of the doctrine is implicit in a statement of its elements.  For the doctrine to apply, the instrumentality causing the damage must be in the exclusive possession of or under the exclusive management of the defendant, the accident must be of such nature and character as does not ordinarily occur if due care is used, and the evidence regarding the cause of the incident is accessible to the defendant and inaccessible to the injured party.  <u>Stein</u> v. <u>Powell</u>, 203 Va. 423, 426, 124 S.E.2d 889, 891 (1962).

In other words, the mere fact that an accident occurred does not warrant application of the doctrine.  It may be utilized only

when the circumstances of the incident, without further proof, are such that, in the ordinary course of events, the incident could not have happened except on the theory of negligence. Beer Distrib., Inc. v. Winfree, 190 Va. 521, 525, 57 S.E.2d 902, 904 (1950). In such case, the doctrine raises a presumption or permits an inference of negligence. It is not to be applied, however, when evidence is available. Cooper v. Horn, 248 Va. 417, 421, 448 S.E.2d 403, 405 (1994).

Moreover, the doctrine never applies in the case of an unexplained accident that may have been attributable to one of two causes, for one of which the defendant is not responsible. Seven-Up Bottling Co. v. Gretes, 182 Va. 138, 143, 27 S.E.2d 925, 927 (1943). Accord Logan v. Montgomery Ward & Co., 216 Va. 425, 429, 219 S.E.2d 685, 688 (1975).

In the present case, the plaintiff has failed to prove that an incident occurred which normally would not have occurred if defendant had used reasonable care. The employee's testimony about the maintenance of defendant's tractor-trailer unit on the day in question prior to the incident was clear, reasonable, and uncontradicted. Indeed, it showed defendant to be completely free of fault in the manner the rig was connected, locked, and operated. The plaintiff did not seek to eliminate alternative causes of the separation, such as, latent defects in the equipment. Also, she offered no grounds for deciding that simply because the unit separated, it therefore must have been due to

defendant's negligence; she proved only that an accident happened causing her injury.  And, that is insufficient.

The case of Virginia Transit Co. v. Durham, supra, heavily relied upon by the plaintiff, is inapposite.  There, a defendant's bus collided with an automobile at a city street intersection and then travelled upon an adjacent sidewalk injuring a pedestrian walking there.

While this Court's opinion in Durham fails to articulate the precise questions presented, an examination of the record and briefs in the case, filed among the Court's records, reveals that the parties debated whether the plaintiff proved the defendant was negligent, and whether the trial court erred in giving a res ipsa loquitur instruction.  Record at 4, Virginia Transit Company v. Durham, (No. 3601); Brief on Behalf of Defendant in Error at 2-3, Durham (No. 3601).

As the opinion indicates, the principal controversy on appeal was whether the defendant bus company had proved, as a matter of law, that the hose line on the brakes of the bus had failed through no fault of the defendant.  Actually, as shown by the conclusory statements in the opinion dealing with res ipsa loquitur, see e.g., 190 Va. at 983, 984, 59 S.E.2d at 60, as well as the briefs of the parties, application of the doctrine was not seriously questioned by the defendant; the fight was over the sufficiency of the defendant's evidence to rebut the presumption of negligence.  Indeed, the Court ruled that the defendant's

evidence did not "conclusively prove that the failure of the hose line took place before the collision with the other car."  Id. at 987, 59 S.E.2d at 62.

Additionally, the Durham court relied mainly on the circumstances of the accident by opining that when "a motor vehicle is operated so that it leaves the designated vehicular thoroughfare and enters upon a city sidewalk into an area set aside for the exclusive use of pedestrians and there inflicts injury, the case falls within the maxim, res ipsa loquitur."  Id. at 984, 59 S.E.2d at 61, citing Trauerman v. Oliver's Admr, 125 Va. 458, 462-64, 99 S.E. 647, 648-49 (1919), a case which did not discuss res ipsa loquitur.  Of course, even if the doctrine were today held to apply to such state of facts, they do not exist here.

Consequently, the judgment of the trial court will be

Affirmed.