Present:  All the Justices

WESTLAKE PROPERTIES, INC., ET AL.

                                        OPINION BY
v.  Record No. 060518        JUSTICE LAWRENCE L. KOONTZ, JR.
                                      January 12, 2007
WESTLAKE POINTE PROPERTY
 OWNERS ASSOCIATION, INC.

              FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
                    William N. Alexander II, Judge

     This appeal arises from a judgment of the trial court

confirming a jury verdict in favor of a property owners'

association against the corporate developer and the corporate

contractor for construction of a townhome community.  The

property owners' association maintained that as a result of

negligence in development and construction, the septic system

serving the community was damaged when massive soil erosion

occurred on the community property.  The sufficiency of the

evidence to support this negligence claim is not at issue in

this appeal.  The principal issues we consider are whether the

property owners' association had standing to bring the action on

its own behalf and, if so, whether the individual property

owners were nonetheless necessary parties to the action.  We

also consider whether an improper attempt to impeach a witness

was adequately cured by a cautionary instruction to the jury and

whether the jury was correctly instructed on the issue of

proximate causation and the proper measure of damages.

BACKGROUND

Westlake Pointe is a townhome community located on Smith Mountain Lake in Franklin County. Westlake Properties, Inc. began development of Westlake Pointe in 1998.[1] In an original declaration of covenants, conditions and restrictions recorded among the land records of Franklin County on May 1, 1998, Westlake Properties stated its intention, among other things, to establish "Limited Common Easements . . . which shall be easements to locate, maintain, repair, operate and replace sewer lines, septic systems and drainfields on the common area designated for drainfield use and within any sewer line, septic system or drainfields designated upon land adjoining the property." In that declaration, Westlake Properties further stated that it had "incorporated under the laws of the Commonwealth of Virginia, as a non-profit corporation, Westlake Pointe Property Owners Association, Inc." ("the Association"). The express purpose for creating the Association was to delegate

---

[1]Realty Services, Inc. served as general contractor for the development of Westlake Pointe and is also a party to this appeal. Realty Services is wholly owned by Wayne Yeatts, one of the principals of Westlake Properties, Inc. Yeatts acknowledged that in the development and construction of Westlake Pointe, the two entities worked in concert and essentially functioned as one. For convenience, hereinafter we will refer to the appellants jointly as "Westlake Properties."

to it "the powers of maintaining and administering the Community facilities" including the septic system.

The declaration also provided that "[t]he Developer will be the initial owner of the sewage disposal system . . . and also of the permit issued by the state health commissioner for the construction, maintenance, and operation of the septic tank and drainfield sewage disposal system."  The declaration further provided that "[t]he permit and ownership of the sewage disposal system including the drainfield or Limited Common Easements and the Common Areas upon which said easements are located . . . and [the Developer's] responsibilities [to maintain and repair the system] will be transferred to the Association" upon substantial completion of the development or sale of seventy-five percent of the townhomes.

Westlake Pointe was subsequently developed to consist of forty-six separately owned townhomes in eight buildings.  As originally designed, the septic system included eleven septic tanks and pump stations to service all the townhomes in the development.  Individual sewer lines connected each townhome to one of the eleven septic tanks.  Most of these septic tanks and the other fixtures of the septic system were installed in a slope, which was located behind four of the buildings and between them and the waterline of the lake.  Effluent from the

3

septic tanks was pumped to a drainfield located several hundred yards from the development.  The drainfield was part of the common property that ultimately was deeded to the Association. Most of the fixtures of the septic system were located on lots that abutted and included portions of the slope which ultimately was deeded to the individual owners of the townhomes.

In addition to the construction and installation of the septic system, the engineering design specifications of the Westlake Pointe development plans called for the soil of the slope, where the principal fixtures of the septic system would be located, to be filled, compacted, and graded in a specific manner to prevent excessive erosion and runoff.  Westlake Properties does not contest that it deviated significantly from these specifications for covering the septic system with the specified fill dirt and compacting and grading the slope.  The evidence showed that Westlake Properties negligently failed to use the proper quality of fill material, did not adequately compact the fill material used, and did not contour the slope to the recommended grade.

After Westlake Pointe was fully developed, Westlake Properties turned control of the Association over to the property owners on May 2, 2003.  With the transfer of control, as provided by the declaration, the Association became the

record owner of the common areas of the community, including the fixtures that made up the infrastructure of the common portions of the septic system, as well as the permit issued by the state health commissioner for its operation.

The Association's articles of incorporation expressly require it "to manage and [e]nsure the maintenance, repair, replacement and operation of the septic systems." The Association is required further to maintain the septic system "in compliance with the applicable state and local laws, ordinances, and regulations." To that end, the Association is authorized to make assessments on the property owners to pay for the maintenance and repair of the septic system. Under the provisions of a recorded dedication of easements pertaining to Westlake Pointe, the individual property owners are required to maintain the sewer lines that connect their townhomes to the common fixtures of the septic system, and the Association has an easement to come onto the property of an individual property owner to repair or maintain the fixtures of the septic system.

Prior to the transfer of control to the Association and with it the obligation to maintain and repair the septic system, the property owners had reported to Westlake Properties numerous problems with the slope where the common fixtures of the septic system were located. Specifically, there had been multiple

5

instances of soil erosion, known as "washouts," as well as resulting structural damage to various fixtures of the septic system. Westlake Properties took remedial efforts to repair the damage and rectify the situation, but problems with soil erosion along the entire slope persisted.

From August 9 to August 10, 2003, heavy rain in the Smith Mountain Lake area resulted in a catastrophic failure of the Westlake Pointe septic system. Due to excessive erosion in the slope, the septic tanks and pump stations that served a number of the townhomes were completely exposed and damaged in place or were dislodged entirely from their proper placement in the system so that they were no longer capable of functioning. The erosion rapidly spread along the slope behind other buildings. As a result of the exposure and damage to the septic tanks and pump stations, the entire community was inundated by the smell of the raw sewage.

The Franklin County Health Department investigated the damage to the Westlake Pointe septic system and directed the Association to "come up with a plan of action . . . to keep the sewage system operational and keep sewage off the ground and out of [Smith Mountain Lake]." The Association was given fourteen days to hire an engineer and report back to the Department. According to the Department, the order was directed to the

6

Association as the party "legally responsible" for the maintenance and repair of the septic system.

The Association obtained estimates from several engineers for making repairs to the septic system and ultimately hired ACS Design LLC to devise a plan to address the erosion of the slope that was the origin of the problem with the system. ACS Design, along with the general contractor hired to perform the anticipated repair work and a consulting geotechnical engineering firm, determined that the septic system would need to be entirely redesigned. This would require the relocation of most of the septic system's infrastructure, removal of the existing fixtures of the system, and construction of a retaining wall to prevent future erosion.

According to Dan Early, the ACS Design engineer who designed the plan for the new septic system, the decision not to attempt to restore the system in accord with the original development plan was reached because the erosion of the slope made it "impossible to develop a repair [plan] that was specified on the original design." Early further stated that to repair the system so that it would be as originally designed could not have been achieved within the same budget and time frame that would be required to install the newly designed system.

After the plan to replace the septic system was approved by the health department, the Association voted to assess each homeowner $13,050 to cover the cost of the construction.  The Association further determined, and advised the individual property owners, that it would seek to recover the cost of repairing the septic system from Westlake Properties.  According to Philip H. Martin, an officer of the Association, it was "assumed that any recovery [from Westlake Properties] would be redistributed to the record members of the Association" at the time the special assessment was made.  However, Martin further stated that "[n]o official decision has been made on that issue."

On June 17, 2004, the Association filed a motion for judgment against Westlake Properties seeking $750,000 in damages under theories of negligence, breach of an implied warranty, breach of contract, and indemnity.[2]  Westlake Properties responded to the motion for judgment by filing a plea in bar. As relevant to this appeal, Westlake Properties contended that "the Association lacks standing to bring this action" because the septic system "is not owned by the Association but is owned

[2]The motion for judgment was filed in the Circuit Court of the City of Roanoke.  Before any material proceedings occurred, however, the case was transferred to the Circuit Court of Franklin County.

instead by the individual property owners who are not parties to this action." In a responding brief, the Association contended that it had standing to bring the action because it had a legal obligation to maintain the septic system.

In an order dated August 15, 2005, the trial court denied Westlake Properties' plea in bar, finding that the Association had standing to bring the action. The trial court further ruled, however, that the Association "cannot proceed as a representative of the individual property owners."

Following entry of the trial court's order denying the plea in bar, Westlake Properties filed a motion for reconsideration alleging that during a deposition, Martin had conceded that the Association was acting in a representative capacity for the property owners. Westlake Properties alleged that this concession established both that the Association had no legal claim against Westlake Properties and that, even if it did, the property owners were nonetheless necessary parties to the action. While conceding that the property owners might ultimately benefit from any recovery from Westlake Properties, the Association maintained that it sought to recover damages incurred by the Association and, thus, it was neither acting in a representative capacity for the property owners, nor were they necessary parties to the action.

In an order dated September 28, 2005, the trial court denied Westlake Properties' motion for reconsideration of the standing issue and further ruled that the property owners were not necessary parties to the action. In that order, the trial court adopted by reference the findings of fact and rationale for its ruling as stated in the hearing on the motion for reconsideration:

> I still did not see how the homeowners' association is proceeding in a representational capacity. They are doing exactly what they are required to do.
>
> It is not the individual [property owner's] damage, even though [the Association] might end up distributing any money collected to the homeowners.
>
> The [property owners] are not the people damaged. The damage has been done to the [A]ssociation because they are the ones required by the articles and by the way the corporation has been set up to maintain, to replace, to repair the damage, if any, and the whole system.
>
>  . . . .
>
> It doesn't make the [property owners] necessary parties because the . . . [A]ssociation still will not be coming in and testifying about individual losses. It is not [the property owners'] loss. It is the [A]ssociation's loss, and I don't think the homeowners are necessary parties in this.
>
> The necessary party is the [A]ssociation.

By leave of the trial court, the Association filed an amended motion for judgment on November 23, 2005; however, the amended motion for judgment did not differ materially from the

10

original motion for judgment.  Westlake Properties filed a plea in bar to the amended motion for judgment in which it restated its assertions that the Association lacked standing to bring the action and was acting in a representative capacity for the property owners, who, Westlake Properties again contended, were necessary parties to the prosecution of the action against it. The trial court did not rule on the plea in bar to the amended motion for judgment until the conclusion of the trial, at which time it was summarily overruled.

In a jury trial beginning December 8, 2005 and continuing for five days, the trial court received evidence in accord with the above-recited facts.[3]  Because the issues raised in this appeal relate to actions of the trial court that arose during distinct incidents of the proceedings, we will recite additional relevant evidence and the nature of the proceedings pertinent to those issues within our discussion.  At the conclusion of the trial, the jury found that Westlake Properties was negligent in

---

[3]Immediately prior to trial, upon motion of Westlake Properties to require an election of remedies, the trial court directed that the trial would be bifurcated, with the jury first determining the negligence claim, and that the trial would proceed to the contract, warranty, and indemnity claims only "if necessary."  The Association objected to the trial court requiring it to elect its remedy and to the bifurcation of the trial, but has not assigned cross-error to those rulings. Accordingly, we will express no opinion thereon.

11

its construction of the septic system and awarded the Association $641,788.43. The parties agree that this amount is the precise cost of removing the damaged original system, constructing the replacement septic system, and regrading the slope. In a final order dated January 12, 2006, the trial court confirmed the jury's verdict and award of damages, overruling Westlake Properties' motion to set aside that verdict as contrary to the law and the evidence.

DISCUSSION

This Court awarded Westlake Properties an appeal limited to the following assignments of error:

> 1. The trial court properly ruled before trial that the Association could not proceed in a representational capacity but erred thereafter by permitting the Association to proceed in a representational capacity to recover damages for nonparty property owners.

> 2. The trial court erred by ruling that the Association otherwise had standing.

> [3]. The trial court erred by concluding that individual property owners were not necessary parties.

> [4]. Where the Association called Westlake Properties' president to the stand for the purpose of informing the jury that the president had been convicted of a felony, the trial court erred by denying defendants' motions for mistrial on that and other grounds.

> [5]. The trial court improperly instructed the jury concerning liability and damages[:] (a) Where the Association told the jury in opening statement that the jury would address the question of whether

12

the slope failure was caused by the August 2003 storm and offered evidence accordingly, the trial court erred by taking that question away from the jury and by ruling that defendants could not argue that the slope failure was caused by excessive rainfall and the August 2003 storm[; and] (b) The trial court also improperly instructed the jury concerning the measure of damages.

## Standing and Necessary Parties

Westlake Properties initially contends that the trial court's pre-trial ruling that the Association could not act in a representative capacity for the individual property owners constitutes a factual finding that the Association was, in fact, attempting to act in that capacity. Westlake Properties further contends that subsequent events at trial show that, despite the trial court's order, the Association continued to act as the de facto representative of the property owners, rather than pursuing any claim of its own.

In support of these contentions, Westlake Properties notes that in his opening statement, counsel for the Association referred to the trial as an opportunity to "bring out into the light . . . the situation through which Westlake Pointe Property Owners Association and its members, [t]he folks who are here – many of whom are here out in the audience today, . . . lived the last few years." The Association's counsel later stated, referring to the property owners, that "the folks . . . living here at the lake [in] this development . . . are complaining

13

about the fact that they had to lay out of their [own] pocket[s] $641,000 of their own money."

After the opening statements were made and outside the presence of the jury, Westlake Properties contended that counsel for the Association had, by making reference to the property owners in his opening statement, conceded both that the Association lacked standing to proceed on its own and that the property owners were necessary parties to the case. The trial court, while rejecting these contentions, nonetheless admonished counsel for the Association that "you are representing the . . . Association; you're not representing the individual homeowners . . . . Keep the record clear."

Contrary to the interpretation made by Westlake Properties, nothing in the trial court's August 15, 2005 order suggests that it made a factual finding that the Association had been attempting to proceed jointly or solely as a representative of the individual property owners. Rather, the trial court was clear in its ruling that the Association had independent standing to maintain the action in its own name, that this was the only basis upon which the Association could present its case to the jury, and that the Association could not "proceed as a representative of the individual property owners." These findings were emphasized in the trial court's summation,

subsequently incorporated into its September 28, 2005 order, at the conclusion of the hearing on Westlake Properties' motion to reconsider.

The isolated comments made by counsel for the Association during opening statements, when viewed out of context, might well imply representation of the individual property owners. These comments do not, however, constitute an "admission" that the Association was acting in a representative capacity for the individual property owners. Rather, we are of opinion that these comments were merely references to the property owners collectively as the members of the Association; references that were at worst irrelevant and certainly far short of an admission or an assertion of representative capacity by the Association in this suit.

We recognize that although opening statements are not evidence, the introduction of irrelevant or prejudicial issues by counsel during opening statements can be grounds for a mistrial. See, e.g., Forsberg v. Harris, 238 Va. 442, 445, 384 S.E.2d 90, 91-92 (1989)(counsel's mentioning that defendant was employed in the insurance industry was grounds for setting aside verdict). Here, the full context of counsel's opening statement made clear to the jury that the issue before it would be whether and to what extent the Association was damaged by Westlake

Properties' negligence.  The evidence subsequently presented at trial was limited to that claim for damages.  Accordingly, we hold that the Association was not acting in a representative capacity for the individual property owners with respect to any individual damages they may have suffered as a result of Westlake Properties' negligence.[4]

We turn now to Westlake Properties' principal contention that even if the Association was not acting in a representative capacity for the individual property owners, the trial court erred in ruling that the Association had independent standing to proceed against Westlake Properties for the damage to the septic system.  In this regard, Westlake Properties reasons that although it conveyed to the Association the common areas of the development, the real property comprising the slope where the erosion occurred and where the majority of the common fixtures of the original septic system were located was deeded to

---

[4]Our analysis is not altered by the likelihood that the Association has an agreement, or at least an informal understanding, that any recovery from the litigation would be distributed to the individual property owners.  Such a distribution would be entirely in keeping with the nature and purpose of the Association under the circumstances of this case. The Association is not intended to be a for profit enterprise. To the extent that fees and assessments paid by the members exceed the expenses incurred by the Association and a reasonable reserve, it is not improper for excess funds, however acquired, to be returned pro rata to the membership.

individual property owners whose townhomes abut the slope. Westlake Properties further reasons that the Association's obligation to maintain the septic system is secondary to that of the individual property owners, who are required by the recorded documents to "maintain[], repair or replace[] . . . the sewage lines within [each] lot [owned] by the [individual] lot owner[s]." Accordingly, Westlake Properties concludes that the Association could not establish damages independent from the damages incurred by the individual property owners on their lots. We disagree.

A party has standing if it can "show an immediate, pecuniary, and substantial interest in the litigation, and not a remote or indirect interest." Harbor Cruises, Inc. v. State Corp. Comm., 219 Va. 675, 676, 250 S.E.2d 347, 348 (1979) (per curiam). "The concept of standing concerns itself with the characteristics of the person or entity who files suit. The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case. In asking whether a person has standing, we ask, in essence, whether he has a sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fully and faithfully developed." Cupp v. Board

of Supervisors of Fairfax County, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984)(internal citation omitted); see also Grisso v. Nolen, 262 Va. 688, 693, 554 S.E.2d 91, 94 (2001); Goldman v. Landsidle, 262 Va. 364, 371, 552 S.E.2d 67, 71 (2001).

It is clear, as Westlake Properties contends, that the Association did not own the real property, that is the slope, where the majority of the common fixtures that made up the original septic system were located. On this record, it is also beyond dispute that the Association owned, and was the party legally responsible for the maintenance and repair of, the fixtures of the septic system that served the entire development. Westlake Properties' assertion that the individual property owners had the primary responsibility to maintain the septic system as a whole is simply contrary to clear and unambiguous express provisions of the pertinent recorded documents which require the individual property owners to maintain their individual sewer lines between their townhomes and the common septic system, but places responsibility for maintenance and repair of the common fixtures of the system exclusively with the Association.

It also cannot be disputed that in order to function as designed, the original septic system was required to be placed in ground that had been properly graded and compacted to avoid

18

excessive erosion.  Thus, even though the Association did not own the real property, the damage caused to the septic system by the erosion of the slope injured the Association and it had "an immediate, pecuniary, and substantial interest" in recovering for that damage.  Accordingly, we hold that the trial court did not err in ruling that the Association had standing to bring this action against Westlake Properties.

We turn now to Westlake Properties' contention that the individual property owners were necessary parties in this suit. Westlake Properties asserts that "the interests of individual property owners were so 'bound up' with the interest of the Association that the presence of the property owners . . . was a necessity," and their absence as parties deprived the trial court of the power to render complete justice.  Westlake Properties maintains that this is so, in part, because a portion of the damages sought by the Association included the regrading of the slope and installation of a retaining wall.  It further maintains that there is the possibility that individual property owners might have claims against Westlake Properties for damages unrelated to the septic system and, thus, that it may be subjected to further litigation.  Accordingly, Westlake Properties contends that even if the Association had standing to proceed in the matter, the trial court erred in failing to find

that the individual property owners were nevertheless necessary parties to the action. Again, we disagree.

It is a matter of common knowledge that fixtures comprising a septic system are installed below the surface of the soil. It follows then that the process of repairing or replacing a damaged septic system necessarily requires invasion of the soil and the subsequent restoration of the real property where the damaged and replaced fixtures of the system were located and where the new fixtures are installed. In this case, the Association was given easements over the lots of the individual property owners so that it could satisfy its duty to maintain and repair the sewer system. As the owner of the dominant estate, the Association had the duty to maintain those easements in a manner consistent with the use allowed. Here that duty required the restoration of the disturbed real property in which the sewer system was located. See Anderson v. Lake Arrowhead Civic Ass'n, 253 Va. 264, 273, 483 S.E.2d 209, 214 (1997); Pettus v. Keeling, 232 Va. 483, 490, 352 S.E.2d 321, 326 (1987). Thus, to the extent that the Association's damages include repairs and improvements to real property owned by individual property owners, those damages were nonetheless direct damages incurred by the Association as a result of its obligation to maintain and repair the septic system.

A necessary party is one who has an interest in the subject matter of the litigation that is likely to be defeated or diminished by the litigation. Raney v. Four Thirty Seven Land Co., 233 Va. 513, 519, 357 S.E.2d 733, 736 (1987). While the individual property owners may have had, and may still have, claims against Westlake Properties for other damage suffered as a result of its negligence, the repair of the damaged slope was a natural consequence of the Association's duty to maintain the septic system and the easements in which the fixtures of the system were located. By seeking recovery only for the direct damages it incurred, the Association's action against Westlake Properties neither implicated nor imperiled any claim by an individual property owner for damages not related to the replacement of the damaged septic system. Accordingly, we hold that the trial court did not err in ruling that none of the individual property owners were necessary parties to the action filed by the Association.

### Impeachment of an Adverse Witness

During its case-in-chief, the Association called Coy Cooper, president of Westlake Properties, as an adverse witness. At the outset of Cooper's testimony, the Association's co-counsel asked, "Now, Mr. Cooper, in this case in front of the jury we're trying to get some of the truth out here, and one of

21

the truths that's in this case is [that] you've been convicted of a felony, correct?" Counsel for Westlake Properties immediately objected to the question, and the witness did not answer the question. The trial judge retired to chambers with counsel for both parties. The conference in chambers was not recorded. Thereafter, Cooper completed his direct testimony and the proceeding was continued with the understanding that the issue would be considered further.

On the next day of the trial, Westlake Properties expanded its objection to the attempt to impeach Cooper to include a motion for mistrial. The Association agreed to withdraw the question, but contended that a cautionary instruction to the jury would be sufficient to cure any harm the question may have caused. Westlake Properties contended that a mistrial was the only proper course as "cautionary instructions are of little efficacy and in fact may highlight the thing that we are all trying to minimize." Over Westlake Properties' objection, the trial court denied the motion for mistrial and instructed the jury that the "question was an improper question, it should not have been asked, and I am telling you now to just disregard the fact that that question was asked and do not consider it in any way."

During oral argument of this appeal, the Association's appellate counsel acknowledged that the question posed to Cooper was improper and attributed that error to the fault of an inexperienced associate counsel who had not adequately researched the issue. Even accepting this explanation, it appears from the record that the question was posed to impeach Cooper in a manner calculated to have the most dramatic effect on the proceedings and with no identifiable purpose other than to impugn the character of the witness. We condemn in the strongest possible terms the use of such tactics, even if they result from the inexperience of counsel rather than the purposeful disregard of procedural rules. The issue remains, however, whether the trial court properly denied the motion for a mistrial.

> "The decision whether to grant a motion for a mistrial is a matter submitted to the trial court's sound discretion." Lowe v. Cunningham, 268 Va. 268, 272, 601 S.E.2d 628, 630 (2004) (citation omitted). Generally, "absent a manifest probability of prejudice to an adverse party, a new trial is not required when a court sustains an objection to an improper remark or question by counsel and thereafter instructs the jury to disregard the remark or question." Id. at 272, 601 S.E.2d at 630. However, "when the prejudicial effect of an improper remark or question is overwhelming, such that it cannot be cured by a cautionary instruction," a trial court must grant a new trial, if requested. Id. at 273, 601 S.E.2d at 631. In determining whether [the remark or question] is so inherently prejudicial that a cautionary instruction cannot cure the prejudice, several factors must be considered. Those factors include "the relevance and

23

content of the improper reference, . . . whether the reference was deliberate or inadvertent[, and] the probable effect of the improper reference." Id. at 273, 601 S.E.2d at 631.

Castle v. Lester, 272 Va. 591, 610-11, 636 S.E.2d 342, 353 (2006).

Westlake Properties notes that in Smith v. Lohr, 204 Va. 331, 336-37, 130 S.E.2d 433, 437 (1963), this Court held that a trial court erred in overruling a motion for mistrial when a party was called as an adverse witness for the sole purpose of impeaching him through evidence of a prior felony conviction. Our decision in Smith can be distinguished on the ground that here the trial court did not permit the impeachment question to be answered and instructed the jury to disregard the question and not to speculate on the answer that might have been given. Moreover, the verdict ultimately rendered by the jury does not suggest that it was influenced by this isolated incident, as that verdict is wholly in accord with the relevant evidence. Cooper did not materially deny the negligence of Westlake Properties and Wayne Yeatts, vice-president of that corporation, virtually conceded that negligence during his testimony that no compaction tests were made of the soil used to fill around the septic tanks and no effort was made to ensure that the final contour of the slope was achieved as specified by the engineers. Accordingly, we hold that the trial court, under the particular

24

circumstances of this case, did not abuse its discretion in denying Westlake Properties' motion for mistrial and instead exercising its discretion to issue a curative instruction to the jury.[5]

## Jury Instruction Issues

The principal point of contention between the parties was whether the erosion of the slope and the attendant damage to the septic system had been caused by the alleged negligence in the construction of the septic system or was the result of unusually heavy rain during the period preceding the significant erosion in August 2003.

At the conclusion of all the evidence, the Association sought to preclude Westlake Properties from arguing that the damage was solely caused by the unusually heavy rain as an act of nature otherwise known as a force majeure defense. Relying upon Cooper v. Horn, 248 Va. 417, 448 S.E.2d 403 (1994), the Association contended that in order to be entitled to assert such a defense, Westlake Properties was required to show that no human agency was a contributing factor in the damage incurred,

---

[5]Westlake Properties' assignment of error also asserts that the trial court erred in denying its motion for mistrial on "other grounds." We will not address such a general and unspecific assertion of error. See Yeatts v. Murray, 249 Va. 285, 290-91, 455 S.E.2d 18, 21-22 (1995).

and that the heavy rain " 'was the sole proximate cause of the injury.' " Id. at 425, 448 S.E.2d at 408 (quoting Southern Ry. v. Neal, 146 Va. 229, 239, 135 S.E. 703, 706 (1926)) (emphasis added). The trial court sustained the Association's motion, with Westlake Properties noting its objection.

Relevant to this issue, the Association offered and was granted the following jury instruction:

> If you find that the defendants or either of them are negligent and the negligence of either or both of them was a proximate cause of the plaintiff's loss, then you shall find your verdict for the plaintiff regardless of the rain.

(Emphasis added).

Westlake Properties objected to this instruction, contending that "it would be possible for the jury to find from [the] evidence that neither [of the] defendants were negligent and that the cause of the slope failure was, in fact, [an] extreme storm, the rain." Westlake Properties proffered a general instruction on superseding cause, which the trial court refused. Westlake Properties did not proffer a specific instruction on a force majeure defense.

On appeal, Westlake Properties maintains that the trial court erred in granting the Association's jury instruction because it removed from the jury the determination of causation by requiring the jury not to consider whether the rain was a

26

proximate cause of the failure of the slope. Thus, according to Westlake Properties, the jury was left essentially to conclude that the failure of the slope must have been caused by Westlake Properties' negligence.

"There may be more than one proximate cause of an event." Molchon v. Tyler, 262 Va. 175, 182, 546 S.E.2d 691, 696 (2001); Panousos v. Allen, 245 Va. 60, 65, 425 S.E.2d 496, 499 (1993). While it is self-evident that the rain must have been a proximate cause of the erosion of the slope, the record evidence would not have supported a defense by Westlake Properties that the rain was the sole proximate cause of the failure of the slope.

By precluding the jury from considering the factor of the rain, the trial court did not, as Westlake Properties suggests, direct the jury to find that Westlake Properties was negligent and that its negligence caused the failure of the slope. Rather, the instruction properly focused the jury on the question of whether Westlake Properties was negligent and if so, whether that negligence was a proximate cause of the erosion of the slope and the ensuing damage to the septic system. Accordingly, we hold that the trial court did not err in granting the instruction in question.

27

Lastly, we turn to the measure of damages issue raised by Westlake Properties.  The trial court granted the Association's instruction defining the measure of damages as "the reasonable cost of repairing the property plus the necessary and reasonable expenses shown by the evidence to have been incurred by the [Association] as a result of the damage to the property." Westlake Properties objected to this instruction, contending that the correct measure of damages was the cost to repair and restore "the septic system substantially in accordance with the plans and specifications under which the septic system was originally constructed" as required by the language of the recorded documents, rather than the cost of the septic system designed and installed by the contractor and engineers hired by the Association after the original system failed.

On appeal, Westlake Properties maintains that the replacement septic system was of superior quality to the system that was originally designed and that the damages for its negligence should have been limited to the cost of restoring the system to its original design.  Westlake Properties' assertion is unavailing for the simple reason that the uncontested evidence was that the cost for restoring the septic system as originally designed would have exceeded the cost of constructing the new system.

28

"The measure of damages in a negligence action is that amount necessary to compensate the injured party for the damages proximately caused by the tortious conduct." Lochaven Co. v. Master Pools by Schertle, Inc., 233 Va. 537, 541, 357 S.E.2d 534, 537 (1987). In Lochaven Co., the damage award on a tort claim was held inadequate because property damage elements shown to have been proximately caused by the defendant's conduct were not compensated in the award. Id. at 543, 357 S.E.2d at 538. Regarding a claim on a breach of contract theory, a cost measure of damages was not appropriate because the benefit to be derived from the complete removal and replacement of an improperly constructed swimming pool was grossly disproportionate to the cost of doing so. Id. The evidence in this case, by contrast, showed that the removal of the original septic system, its replacement with the newly designed system, and the necessary repair of the slope was the most cost-effective and beneficial method of remedying the damages caused by Westlake Properties' negligence. Accordingly, we hold that the trial court's instruction on the measure of damages was the correct statement of the law under the facts of this case.

CONCLUSION

For these reasons, we hold that there is no error in the trial court's judgment confirming the jury's verdict.

29

Accordingly, the judgment in favor of the Association will be affirmed.

<u>Affirmed</u>.