Present: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Russell, S.J.

PHILIP MORRIS USA INC.

v.   Record No. 060858

THE CHESAPEAKE BAY FOUNDATION, INC.

                                        OPINION BY
                               JUSTICE LAWRENCE L. KOONTZ, JR.
                                         April 20, 2007
COMMONWEALTH OF VIRGINIA, EX REL.
 STATE WATER CONTROL BOARD, ET AL.

v.   Record No. 060866

THE CHESAPEAKE BAY FOUNDATION, INC.

FROM THE COURT OF APPEALS OF VIRGINIA

In these appeals, we consider whether the Court of Appeals of Virginia correctly determined that an environmental conservation organization has standing to appeal the approval of a wastewater discharge permit affecting the James River issued by the State Water Control Board. Specifically, the issue presented in these appeals is whether the organization has representational and individual standing to request judicial review to challenge the issuance of the permit pursuant to the provisions of Code § 62.1-44.29.

BACKGROUND

Philip Morris USA Inc. (Philip Morris), with headquarters in Richmond, Virginia, is the nation's largest cigarette manufacturer. Philip Morris' Park 500 facility in Chester, Virginia is used to produce a reconstituted tobacco product.

Since 1972, the Park 500 facility has held a discharge permit allowing the disposal of treated wastewater into the James River at a point below Richmond. On October 28, 2002, Philip Morris filed a permit renewal application under the Virginia Pollution Discharge Elimination System. Code § 62.1-44.15.

The discharge of pollutants into public waterways is regulated by the federal Clean Water Act of 1977, 33 U.S.C § 1251 et seq. (2000 & Supp. IV 2004). The Clean Water Act allows states to administer the issuance of wastewater discharge permits within their territories. The State Water Control Board administers the wastewater discharge permit program in Virginia under the State Water Control Law. Code §§ 62.1-44.2 through 62.1-44.34:28.

The Chesapeake Bay Foundation (the Foundation), a non-profit corporation registered with the Virginia State Corporation Commission and dedicated to protecting the Chesapeake Bay and its tributaries, participated in the public comment process regarding the renewal of the Park 500 facility permit. The Foundation contended that the levels of nitrogen and phosphorus in the wastewater discharged by the Park 500 facility would impair the river's designated uses and kill or injure fish and aquatic plants. Following a public hearing, the

2

State Water Control Board approved the renewal of Philip Morris' Park 500 facility permit.

Thereafter, the Foundation timely filed a petition for appeal in the Circuit Court of Chesterfield County. The petition alleged that the State Water Control Board's decision to issue the permit violated various provisions of the federal Clean Water Act and the State Water Control Law, citing 33 U.S.C. §§ 1311 and 1342 and Code §§ 62.1-44.2, 62.1-44.4, and 62.1-44.15. The Foundation based its assertion of legal standing in an individual capacity to seek judicial review of the board's decision upon fifteen educational, recreational, and Chesapeake Bay restorative programs on the James River that the Foundation operates downstream from the Park 500 facility and that would be harmed by the permitted discharge. The Foundation further asserted that it had representational standing based upon injury to unidentified members of the Foundation who regularly use and enjoy the James River for swimming, boating, kayaking, canoeing, sport fishing, and other aesthetic, educational, and recreational pursuits. The Foundation alleged that, as a result of the unlawful issuance of the discharge permit, it had "suffered and will continue to suffer actual and/or imminent injury" and that it "represents members and

3

citizens of the Commonwealth who have suffered and will continue to suffer actual and imminent injury."

Philip Morris and the Commonwealth, acting on behalf of the State Water Control Board, filed demurrers asserting that the Foundation had failed to plead sufficient facts to establish its standing in an individual capacity. Philip Morris and the Commonwealth further asserted that the Foundation's claims of representational standing were not authorized under any relevant statute.

Following a hearing on these demurrers, the circuit court issued an opinion letter dated January 4, 2005 in which it concluded that the Foundation had neither individual nor representational standing to pursue an appeal of the decision of the State Water Control Board to issue the renewed permit. In the opinion letter, subsequently incorporated by reference into a final order entered on April 28, 2005, the circuit court found that the Foundation had "suffered no particularized injury in fact and does not have the authority to sue on behalf of a class as required by the legislature."[1]

---

[1] The circuit court further found that the Foundation would not be able to cure these defects by amending the petition for appeal and, accordingly, although the Foundation had not yet requested leave to amend, prospectively opined that such a request would not be granted. The Foundation subsequently filed a motion for reconsideration and request for leave to amend. On

4

The Foundation appealed the judgment of the circuit court to the Court of Appeals.  In that appeal, the Foundation asserted that the circuit court incorrectly ruled that Virginia does not recognize representational standing and contended that it had pled sufficient facts to establish both representational and individual standing under Code § 62.1-44.29.

Philip Morris and the Commonwealth contended, based on prior Court of Appeals precedent, that representational standing is not recognized in Virginia unless it is specifically authorized by statute.  See Pearsall v. Virginia Racing Commission, 26 Va. App. 376, 381, 494 S.E.2d 879, 882 (1998).  They contended that Code § 62.1-44.29 does not expressly authorize representational standing and that such standing may not be implied from the statute.  They further asserted that the Foundation's claims of injury were merely allegations of harm to the environment which do not establish a basis for individual standing.  See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000) (hereinafter "Laidlaw").

---

April 8, 2005, the circuit court issued a second opinion letter reiterating its findings from the January 4, 2005 opinion letter and rejecting further authority cited by the Foundation.  In denying the motion for reconsideration in the final order, the circuit court incorporated by reference this second opinion letter.

5

On April 4, 2006, the Court of Appeals issued a published opinion reversing the judgment of the circuit court. Chesapeake Bay Foundation, Inc. v. Commonwealth, 48 Va. App. 35, 628 S.E.2d 63 (2006). The Court of Appeals concluded that the Foundation had alleged sufficient facts in the petition filed in the circuit court to establish individual standing. Id. at 57, 628 S.E.2d at 74. Additionally, the Court of Appeals noted that it had already resolved the issue of whether Code § 62.1-44.29 provided for representational standing in a decision announced after the circuit court had entered final judgment in this case. Under nearly identical circumstances, the Court of Appeals had determined that "Virginia recognizes representational standing . . . and that Code § 62.1-44.29 confers this representational standing in cases meeting its requirements." Id. at 53, 628 S.E.2d at 72 (quoting The Chesapeake Bay Foundation, Inc. and Citizens for Stumpy Lake v. Commonwealth, 46 Va. App. 104, 118, 616 S.E.2d 39, 46 (2005) (hereinafter "Stumpy Lake")). Applying that decision, the Court of Appeals held that sufficient facts had been pled in the petition filed in the circuit court to support the Foundation's claim to have representational standing for its members. Id. at 54, 628 S.E.2d at 73. Accordingly, the Court of Appeals reversed the judgment of the circuit court

6

sustaining the respondents' demurrers and remanded the case for further proceedings.  Id. at 57, 628 S.E.2d at 74.

Philip Morris and the Commonwealth filed separate petitions for appeal in this Court challenging the judgment of the Court of Appeals.  We awarded appeals to both and consolidated the appeals for argument.

DISCUSSION

The principles of appellate review that guide our consideration of a circuit court's judgment granting a demurrer are well-established and do not need repetition at length here. A demurrer admits the truth of the facts alleged in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those facts. See, e.g., Mattaponi Indian Tribe v. Commonwealth, 261 Va. 366, 370, 541 S.E.2d 920, 922 (2001); Rosillo v. Winters, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988).  Accordingly, in reviewing the judgment of the circuit court, an appellate court looks solely to the allegations in the pleading to which the demurrer was sustained.  Moreover, because the issues in this case present pure questions of law, we do not accord a presumption of correctness to the judgment below, but review the issues de novo.  Board of Zoning Appeals v. Caselin Sys., 256 Va. 206, 211, 501 S.E.2d 397, 400 (1998); see also Crawford v. Haddock,

7

270 Va. 524, 528, 621 S.E.2d 127, 129 (2005); Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003).

Representational Standing

As they did in the circuit court and before the Court of Appeals, Philip Morris and the Commonwealth contend principally that representational standing to seek judicial review is not recognized in Virginia unless expressly granted by statute. With regard to the provisions of Code § 62.1-44.29 entitling "any person" under specific circumstances to judicial review of a State Water Control Board decision, they maintain that the language of the statute tracks the requirements for finding individual standing to challenge an administrative agency's action and, thus, they conclude that Code § 62.1-44.29 does not grant representational standing to seek judicial review of the decision of the State Water Control Board in this case. Accordingly, they maintain that the Court of Appeals erred in its previous holding in Stumpy Lake that Code § 62.1-44.29 grants representational standing in cases meeting its requirements and in reiterating that holding in the present case.

Initially, we think it helpful to clarify the procedural history regarding Stumpy Lake. The Court of Appeals noted in its opinion in the present case that "[a]lthough a petition for

8

appeal of the Stumpy Lake decision was filed, the Supreme Court ultimately refused to consider the appeal on the merits." Chesapeake Bay Foundation, 48 Va. App. at 53, 628 S.E.2d at 72 (emphasis added).  Accordingly, the Court of Appeals further noted that its "decision in Stumpy Lake remains binding legal precedent."  Id.  Although the refusal of a petition for appeal by this Court usually constitutes a decision on the merits, see Sheets v. Castle, 263 Va. 407, 411, 559 S.E.2d 616, 619 (2002), in this instance the Court of Appeals correctly discerned that this Court dismissed the petition for appeal in Stumpy Lake as procedurally barred under Rule 5:17(c) without reaching the merits.  The Court of Appeals based its holding in Stumpy Lake, that the Commonwealth recognizes representational standing generally, on its prior determination of that issue in Concerned Taxpayers of Brunswick County v. Department of Environmental Quality, 31 Va. App. 788, 525 S.E.2d 628 (2000).  We accepted a petition for appeal in that case and reversed the judgment of the Court of Appeals on other grounds, without addressing the issue of representational standing.  Aegis Waste Solutions v. Concerned Taxpayers of Brunswick County, 261 Va. 395, 544 S.E.2d 660 (2001).[2]  Accordingly, while the Court of Appeals is correct

_____

[2] As in this case, both the Commonwealth and the permit-holder, Aegis Waste Solutions, brought independent appeals from

that its prior panel decisions are binding precedent, unless and until reversed by the Court of Appeals sitting en banc or by this Court on appeal, the present case presents the first opportunity for this Court to review whether representational standing is recognized in Virginia, and if so, under what circumstances.

The authority to issue wastewater discharge permits is granted to Virginia pursuant to the federal Clean Water Act, 33 U.S.C. § 1342(b)(2000 & Supp. IV 2004). The Clean Water Act is administered by the Environmental Protection Agency (EPA). The EPA's stated policy governing the delegation of authority to the states to issue wastewater discharge permits provides that:

> All States that administer or seek to administer a program under this part shall provide an opportunity for judicial review in State Court of the final approval or denial of permits by the State that is sufficient to provide for, encourage, and assist public participation in the permitting process. A State will meet this standard if State law allows an opportunity for judicial review that is the same as that available to obtain judicial review in federal court of a federally-issued NPDES permit (see § 509 of the Clean Water Act). A State will not meet this standard if it narrowly restricts the class of persons who may challenge the approval or denial of permits.

40 C.F.R. § 123.30 (emphasis added).

the decision of the Court of Appeals in Concerned Taxpayers of Brunswick County.

Code § 62.1-44.29 provides for judicial review of decisions of the State Water Control Board. The current version of Code § 62.1-44.29 provides that:

> Any owner aggrieved by, or any person who has participated, in person or by submittal of written comments, in the public comment process related to, a final decision of the Board under §§ 62.1-44.15(5), 62.1-44.15(8a), (8b), and (8c), 62.1-44.15:5, 62.1-44.16, 62.1-44.17, 62.1-44.19 or § 62.1-44.25, whether such decision is affirmative or negative, is entitled to judicial review thereof in accordance with the provisions of the Administrative Process Act (§ 2.2-4000 et seq.) if such person meets the standard for obtaining judicial review of a case or controversy pursuant to Article III of the United States Constitution. A person shall be deemed to meet such standard if (i) such person has suffered an actual or imminent injury which is an invasion of a legally protected interest and which is concrete and particularized; (ii) such injury is fairly traceable to the decision of the Board and not the result of the independent action of some third party not before the court; and (iii) such injury will likely be redressed by a favorable decision by the court.

However, prior to 1996, Code § 62.1-44.29 limited the right to seek judicial review of a decision of the State Water Control Board to aggrieved owners of permitted facilities. See Stumpy Lake, 46 Va. App. at 111-12, 616 S.E.2d at 43; former Code § 62.1-44.29(1)(1992). In 1996, the federal government began to voice its concerns that several states, including Virginia, had judicial review standing requirements for various programs administered by the states under delegatory authority of a federal agency that did not comply with 40 C.F.R. § 123.30 and

11

similar provisions because they narrowly restricted the class of persons who may challenge the approval or denial of permits. See, e.g., 61 Fed. Reg. 20972 (May 8, 1996).

Also in 1996, the United States Court of Appeals for the Fourth Circuit issued its opinion in Virginia v. Browner, 80 F.3d 869 (4th Cir. 1996), cert. denied, 519 U.S. 1090 (1997).[3] In Browner, Virginia challenged the EPA's refusal to approve the State's proposed plan for delegation of authority to administer the federal Clean Air Act to the Virginia Air Pollution Control Board. In late 1993, and again in early 1994, the Commonwealth had submitted a proposed permit program under the Clean Air Act to the EPA. Id. at 873-75. The EPA found the proposal to be deficient in several respects, including a failure to provide for adequate judicial review under Code § 10.1-1318. See id. at 875.

Like the then effective language of Code § 62.1-44.29, the judicial review provisions of Code § 10.1-1318 limited standing for judicial review to owners aggrieved by decisions of the state's permitting agency. Id. at 876. The Fourth Circuit held that the EPA's interpretation that a state must, at a minimum, provide judicial review of permitting decisions to any person

---

[3] Carol M. Browner was the Administrator of the EPA and was sued in her official capacity.

12

who would have standing under Article III of the United States Constitution was correct and, accordingly, the EPA's decision denying delegatory permitting authority under the existing statutory scheme was proper. Browner, 80 F.3d at 876-77.

In response to Browner, but while that decision was on appeal to the United States Supreme Court, the General Assembly amended both Code § 10.1-1318 and Code § 62.1-44.29, as well as Code § 10.1-1457, the judicial review provision of the Virginia Waste Management Act, to include nearly identical provisions allowing any person aggrieved of a decision of the respective permitting authority to seek judicial review. These amendments were made effective on the condition that any subsequent reversal of the decision in Browner would repeal the amendments and revert the statutes to their original forms. 1996 Acts ch. 1032. The General Assembly subsequently and appropriately acknowledged that the Supreme Court's denial of certiorari in Browner effectively invalidated the prior provisions of Code § 10.1-1318, and by implication those of Code § 10.1-1457 and Code § 62.1-44.29, and, accordingly, the 1996 amendments to those statutes became final. 1997 Acts ch. 520.

In interpreting a statute, we presume that the General Assembly acted with full knowledge of the law in the area in which it dealt. United Masonry, Inc. v. Riggs National Bank,

13

233 Va. 476, 480, 357 S.E.2d 509, 512 (1987); <u>Powers v. County School Board</u>, 148 Va. 661, 669, 139 S.E. 262, 264 (1927). It is clear from its language that the 1996 amendment to Code § 62.1-44.29 was intended to expand the availability of judicial review of permitting decisions to be coextensive with the federal requirements for judicial review of "a case or controversy pursuant to Article III of the United States Constitution." The three requirements for making such a determination are expressly provided in the statute. The issue before us then becomes whether in adopting those requirements, the General Assembly intended to grant not only individual standing for persons other than aggrieved permit holders, which it unquestionably did, but for representational standing as well.

Representational standing essentially allows an organization to bring a suit on behalf of its members and was a well-established principle in federal law at the time of the 1996 amendment of Code § 62.1-44.29. We presume that the General Assembly was aware of this circumstance when it amended Code § 62.1-44.29. Accordingly, we will look to the federal court's requirements for establishing representational standing to determine whether the Foundation may claim representational standing in seeking judicial review of the decision of the State Water Control Board under this statute.

14

In *Warth v. Seldin*, 422 U.S. 490 (1975), the United States Supreme Court addressed the requirements for representational standing. The Court held that an organization may bring suit on behalf of its members where those members suffer immediate or threatened injury as a result of the challenged action and there would be a justiciable case had the members themselves brought the action. Id. at 511. Further, the Court held that the nature of the claim and the relief sought must not require the individual participation of the injured members in order to properly resolve the case. Id.

In *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977), the Supreme Court further clarified representational standing and provided a three prong test based on the holding in Warth. The Court explained that an organization will have representational standing when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. at 343.

The first prong of the representational standing test requires that the representing organization include "at least one member with standing to present, in his or her own right,

15

the claim . . . pleaded by the association." United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 555 (1996). This is simply a requirement that any claim of standing be fundamentally based on the individual standing test laid out in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), the requirements of which are reiterated in Code § 62.1-44.29.

We begin by examining whether the Foundation has alleged sufficient facts to establish individual standing for at least one of its members. In order to satisfy the first prong of the Lujan test a plaintiff must have pled that at least one of its members has an "injury in fact." In an environmental suit, allegations of injury to the environment are not sufficient to show a legally protected interest. Laidlaw, 528 U.S. at 181; Piney Run Pres. Ass'n v. County Comm'rs. of Carroll County, 268 F.3d 255, 263 (4th Cir. 2001). However, "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Laidlaw, 528 U.S. at 183 (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972)). Only an imminent injury is required. A plaintiff is not obligated to "await the consummation of a threatened injury to obtain

16

preventive relief."  Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 160 (4th Cir. 2000)(hereinafter "Gaston Copper").

In their petition filed in the circuit court, the Foundation alleges that "[t]he discharge of nutrients in amounts and concentrations authorized by the unlawful [p]ermit . . . has and will continue to cause injury to the [Foundation] and . . . its members who regularly use and enjoy the James River, a tributary of the Chesapeake Bay[,] for swimming, boating, kayaking, canoeing, sport fishing, and other educational and recreational pursuits."  (Emphasis added.)  These constitute allegations of an actual and ongoing injury to the recreational interests of members of the Foundation sufficient to satisfy the injury in fact prong of Lujan.

Philip Morris and the Commonwealth contend that the alleged injury does not represent a legally protected interest and that generalized grievances of the public are not sufficient to grant standing.  See Gaston Copper, 204 F.3d at 156.  However, the Foundation's petition alleges that the issued permit fails to comply with federal and state statutory limits for the protection of designated uses of waterways.  Under 9 VAC § 25-260-10(A), all state waters are designated for certain "recreational uses, e.g., swimming and boating; the propagation

17

and growth of a balanced, indigenous population of aquatic life, including game fish, which might reasonably be expected to inhabit them; and the production of edible and marketable natural resources, e.g., fish and shellfish."  Additionally, the State Water Control Board is required to develop "water quality standards" or "criteria" in order to "protect the designated use[s]" of the body of water to which they apply. See 9 VAC § 25-260-5; 9 VAC § 25-260-20.  Thus, if true, the Foundation's petition shows that the alleged injury comes as a result of a failure by the State Water Control Board to protect the designated uses of the James River.

We therefore hold that the Foundation has sufficiently pled a concrete, particularized and legally protected injury to at least one of its members.  At the pleading stage, the Foundation is not required to name those members.

The second prong of Lujan requires a causal connection between the injury alleged and the actions of defendants.  More specifically, in the context of a challenge to a State Water Control Board decision, a plaintiff must allege that the "injury is fairly traceable to the decision of the Board and not the result of the independent action of some third party not before the court."  Code § 62.1-44.29(ii); see also Lujan, 504 U.S. at 560.  The "fairly traceable" requirement ensures that there is a

18

genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct.  But traceability " 'does not mean that plaintiffs must show to a scientific certainty that defendant's effluent . . . caused the precise harm suffered by the plaintiffs.' "  Gaston Copper, 204 F.3d at 161 (quoting Natural Resources Defense Council, Inc. v. Watkins, 954 F.2d 974, 980 & n.7 (4th Cir. 1992)).

The Foundation's petition alleges that the State Water Control Board's decision to issue the permit will excessively increase the amount of nutrients in the James River.  The increase in nutrients causes algae blooms that harm aquatic life and increase the turbidity of the James River.  As a direct result, the James River is changed in such a way as to harm the interest of the Foundation's members.  As is common in environmental cases, there is admittedly more than one step in the causal chain.  Despite this, the petition alleges sufficient facts, if true, to support the conclusion that there is a clear connection between the injury asserted and the decision of the State Water Control Board.  See Mattaponi Indian Tribe, 261 Va. at 370, 541 S.E.2d at 922 (stating that in a demurrer "the facts alleged, and all reasonable inferences flowing from those facts" are taken as true).

19

The final prong of the individual standing test requires an injury that "will likely be redressed by a favorable decision by the court."  Code § 62.1-44.29(iii); see also Lujan, 504 U.S. at 561.  Standing is limited to injuries where a court may reasonably be expected to find a remedy.  Claims must be such that a plaintiff "personally would benefit in a tangible way from the court's intervention."  Warth, 422 U.S. at 508.  In appropriate cases civil penalties may be used to "encourage defendants to discontinue current violations and deter them from committing future ones."  Laidlaw, 528 U.S. at 186.  A complete solution to the alleged injury is not required.  It is enough to be able to address the harms of the named defendants.  See American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 520 (4th Cir. 2003).

The Foundation seeks to have the discharge permit set aside and for the discharge into the James River to cease until such time as Philip Morris demonstrates that it is able to comply with the state designated use for the waterway.  This result is a civil remedy that is available to an appropriate court of review.  As such, the injury is redressable through a favorable decision by the court.

Based on the preceding analysis, we hold that the Foundation has sufficiently pled an injury to at least one member that would grant Article III standing.

The additional two prongs for representational standing described in Hunt are not significant issues in this case. Philip Morris and the Commonwealth have not contested that the interests the Foundation seeks to protect are germane to its purpose or that the relief requested requires the participation of the individual members. The Foundation is an organization established to protect the waterways of the Chesapeake Bay, of which the James River is one. An action to protect the James River from wastewater discharge that may be harmful to the river and bay is within that organizational purpose. Additionally, the remedy sought by the Foundation will address the asserted injury and will not require the participation of individual members. Accordingly, we hold that the second and third prongs of the test for representational standing have been met.

Having concluded that the petition filed in the circuit court has met, under the criteria of Code § 62.1-44.29, all the requirements that would grant Article III standing for an organization seeking representational standing, we hold that the statute authorizes representational standing to a corporate person to seek judicial review of a decision of the State Water

21

Control Board and that the Foundation's petition was thus sufficient to survive the demurrers of Philip Morris and the Commonwealth.

We emphasize that our holding in this case is limited to instances where representational standing is provided for by a statute requiring Article III standing to seek judicial review of an action by a state agency under delegatory authority from the federal government. We are not called upon to consider under the facts of this case whether Virginia would recognize representational standing under any circumstances other than those presented by the facts of this case.

## Individual Standing

We turn now to consider the assertion of Philip Morris and the Commonwealth that the Foundation lacked individual standing to seek judicial review in this case. Code 62.1-44.29 allows "any person who has participated, in person or by submittal of written comments, in the public comment process related to, a final decision of the Board" to obtain judicial review where there is Article III standing. Code § 62.1-44.3 defines a "'Person'" as "an individual, corporation, partnership, association, governmental body, municipal corporation or any other legal entity." The Foundation is a registered corporation and therefore falls within the relevant definition of person.

In order to have Article III individual standing, the Foundation must have pled facts sufficient to meet the test in Lujan and Code § 62.1-44.29 as previously described. The analysis is substantially similar to the analysis for individual standing of the organization's members.

The Foundation has alleged injury to itself as an organization separate and apart from any injury to its members. In its petition, the Foundation alleges that it "operates fifteen (15) educational programs, which include projects in and around the segment of the James River impacted by the unlawful nutrient discharges authorized by the challenged Permit. Among the [Foundation's] programs that are and will continue to be adversely affected by the unlawful nutrient discharges . . . is the replenishment of underwater aquatic grasses in the vicinity of and downstream from the Philip Morris facility." The Foundation's petition further alleges that the excessive nitrates and phosphates in the wastewater discharge cause algae blooms that impact the usefulness of the James River for the Foundation's educational and recreational programs. The wastewater discharge also harms aquatic plants such as the ones included in the Foundation's planting activities. Based on these allegations, we hold that the Foundation has alleged

23

sufficient facts to establish an "injury in fact" to itself as an organization.

The harms alleged on an individual and representational basis are similar. The reasoning in the previous discussion of causal connection and redressability also applies to the Foundation's assertion of individual standing and does not need to be repeated here. The facts alleged in the Foundation's petition, if true, establish a causal connection with its injury and that the relief sought is redressable by the courts.

CONCLUSION

In sum, we hold that Code § 62.1-44.29 provides for representational standing, by an appropriate entity, to seek judicial review of a case decision by the State Water Control Board, as well as for individual standing. We further hold that in the present case the Foundation's petition adequately establishes, for purposes of surviving the demurrers filed by Philip Morris and the Commonwealth, its representational and individual standing to seek judicial review of the State Water Control Board's decision to renew the permit with regard to Philip Morris' Park 500 facility.

For these reasons, the judgment of the Court of Appeals will be affirmed.

<u>Affirmed</u>.

24