COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Callins and Senior Judge Clements
Argued at Richmond, Virginia

**PUBLISHED**

LAYLA H. by her next friend
 MARIA HUSSAINZADAH, ET AL.

OPINION BY
JUDGE RANDOLPH A. BEALES

v.      Record No. 1639-22-2

JUNE 25, 2024

COMMONWEALTH OF VIRGINIA, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Andrew Welle (Isak J. Howell; Nathan Bellinger; Kimberly Willis;
Our Children's Trust, on briefs), for appellants.

Thomas J. Sanford, Assistant Attorney General (Jason S. Miyares,
Attorney General; Steven G. Popps, Deputy Attorney General;
Andrew N. Ferguson, Solicitor General; Erika L. Maley, Principal
Deputy Solicitor General; Graham K. Bryant, Deputy Solicitor
General; Annie Chiang, Assistant Solicitor General, on brief), for
appellees.

Amicus Curiae: Virginia Clinicians for Climate Action (Cale Jaffe;
University of Virginia School of Law, on brief), for appellants.

Amicus Curiae: Law Professors Erwin Chemerinsky, Noah Sachs,
JamesMay, Erin Daly, and Delegate Sam Rasoul (Victor M. Glasberg;
Victor M. Glasberg & Associates, on brief), for appellants.

Amicus Curiae: Public Trust Law Professors Mary Christina Wood,
Michael Blumm, John Dernbach, *et al*. (Evan Dimond Johns;
Appalachian Mountain Advocates, on brief), for appellants.[1]

---

[1] Three groups filed amicus curiae briefs with the Court.  Virginia Clinicians for Climate Action, a second group (which includes several law professors and a member of the Virginia House of Delegates), and a third group (which includes a number of public trust law professors) each moved independently for leave to file amicus briefs in this matter in support of appellants (along with the actual amicus briefs they sought permission to file).  This Court grants those motions from each group for leave to file amicus briefs and has been pleased to consider those briefs in our consideration of this case on appeal.

Appellants appeal the Circuit Court of the City of Richmond's order dismissing their claims against the Commonwealth of Virginia and the other defendants in this case after ruling that the claims are barred by sovereign immunity. Appellants argue that the circuit court erred in dismissing their complaint, which requested that the circuit court declare portions of Code § 45.2-1602 and Code § 45.2-1614 to be unconstitutional and, therefore, invalid.

## I. BACKGROUND

On February 9, 2022, Layla H. (by her mother and next friend, Maria Hussainzadah) and the other plaintiffs[2] (collectively the "Plaintiffs") brought suit against the Commonwealth of Virginia, Governor Glenn Youngkin, the Virginia Department of Energy ("DOE"), the DOE Director, the Virginia Department of Environmental Quality ("DEQ"), and the DEQ Director (collectively, the "Commonwealth") in the Circuit Court of the City of Richmond. According to the Plaintiffs' complaint, the Commonwealth has "implemented a policy and practice of approving permits for fossil fuel infrastructure in the Commonwealth of Virginia, including permits for the production, transport, and burning of fossil fuels." Plaintiffs further allege, "Defendants' historic and ongoing permitting of fossil fuel infrastructure has, and continues to, cause dangerous levels of greenhouse gas ('GHG') pollution, including carbon dioxide ('$CO_2$'). This GHG pollution causes and contributes to the ongoing climate crisis and causes grave harm to these thirteen Youth Plaintiffs." The complaint also states that the Commonwealth sets its policy of approving these permits in compliance with certain sections of the Virginia Gas and Oil Act, Code §§ 45.2-1600 *et seq*.

---

[2] In addition to Layla H., the Plaintiffs include Julian Schenker; Claudia Sachs; Katerina Leedy; Amaya T. (by her next friend, LaKiesha Cook); Cedar B. (by his next friend, Shannon Bell); Ava L. (by her next friend, Margaret Schaefer Lazar); Cadence R.-H. (by her next friend, Rebecca Rubin); Tyrique B. (by his next friend, Kiesha Preston); Giovanna F. (by her next friend, Mary Finley-Brook); Elizabeth M. (by her next friend, Barbara Monacella); Maryn O. (by her next friend, Emily Satterwhite); and Kyla H. (by her next friend, Jennifer Hitchcock).

The Plaintiffs brought four claims in their complaint that they named as Counts I-IV. Two of those claims alleged that the Plaintiffs' *jus publicum* rights were being impaired by portions of the Virginia Gas and Oil Act[3] as well as by the "Defendants' historic and ongoing policy and practice of exercising their statutory discretion in such a manner as to favor the permitting of fossil fuel infrastructure." The other two claims in the Plaintiffs' complaint alleged that those same policies and statutory provisions violate Article I, § 1, § 11, and § 17 of the Constitution of Virginia.[4]

In their complaint, Plaintiffs allege that the challenged statutory provisions and policies cause and contribute to climate change and that the effects of climate change then infringe on their rights. The Plaintiffs allege that their *jus publicum* rights are being burdened because the Defendants "caused and contributed to the climate crisis, which is substantially impairing the Commonwealth's atmosphere, lands, and waters, and Plaintiffs' ability to use such resources protected from pollution, impairment, or destruction for their benefit, enjoyment, and general welfare." Plaintiffs further allege that, due to climate change, their constitutional rights are being violated because they are "being deprived of their fundamental rights to life, liberty, and property, including liberty interests such as the right to personal security, the capacity of

---

[3] Specifically, Plaintiffs challenge "Virginia Gas and Oil Act sections 45.2-1602(1), (2), (5) and 45.2-1614(A)(1), (A)(2), (A)(4), (B)(6)."

[4] Article I, § 11 of the Constitution of Virginia is discussed at length in Plaintiffs' arguments to this Court. However, in their briefs to this Court, the Plaintiffs made no clear arguments specific to Article I, § 1 or § 17 independent of their arguments under Article I, § 11. For example, Plaintiffs did not argue that either Article I, § 1 or § 17 is self-executing and, therefore, waives the Commonwealth's sovereign immunity. Consequently, given that the Plaintiffs have failed to argue to this Court that Article I, § 1 or § 17 presents any grounds to reverse the trial court's judgment, we confine our review of whether the trial court erred to those arguments that the Plaintiffs have actually made to this Court, such as those under the *jus publicum* doctrine and under Article I, § 11. *See Coward v. Wellmont Health Sys.*, 295 Va. 351, 367 (2018) (holding that the appellant bears the burden to adequately argue that the trial court erred (citing *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017))).

Plaintiffs to provide for their basic human needs, safely raise families, learn and practice their religious and spiritual beliefs, and maintain their bodily integrity."

The complaint also alleged what effects of climate change are causing Plaintiffs harm:

> The climate crisis, which Defendants' permitting of fossil fuel infrastructure causes and contributes to, is already having profound impacts in Virginia and is causing grave harm to these Youth Plaintiffs. Increasing temperatures, sea level rise, more frequent and destructive extreme weather events, and increased incidences of vector-borne illnesses are among the climate impacts imperiling these children.

On brief to this Court, Plaintiffs summarized the injuries that they further alleged in their complaint. Plaintiffs stated, "For example, Plaintiff Layla H. suffered from heat exhaustion and heat rash"; "Plaintiff Tyrique B. was bitten by a tick and acquired alpha-gal syndrome"; "Plaintiffs Giovanna F. and Cedar B. contracted Lyme disease"; "Climate change-induced drought reduces soil moisture and water needed for crop irrigation. . . . As a result, Plaintiff Cedar B.'s orchard yields less fruit and Plaintiff Giovanna F.'s family garden is left to wither every August . . . ."; "Climate change also causes ocean acidification that degrades the shellfish in the ocean and Chesapeake Bay, reducing Plaintiff Amaya T.'s ability to access this important food source"; "Long periods of drought, which prevent Plaintiffs Cadence R.-H. and Cedar B. from recreating in their favorite creeks at Alum Springs Park and Poverty Creek . . . are punctuated by extreme precipitation events in Virginia because of anthropogenic climate change"; "Increasingly severe storm damage has also blocked safe access to recreation opportunities and travel"; "Climate change-induced sea level rise is already inundating many places where Plaintiff Giovanna F. seeks to visit regularly and recreate"; and "This looming existential crisis, and the trauma of the physical injuries Plaintiffs have experienced, manifests in unprecedented levels of stress, depression, anxiety, and PTSD."

- 4 -

In their request for relief, the Plaintiffs asked the trial court to enter a declaratory judgment concluding (1) that "the right to use an atmosphere, lands, and waters protected from pollution, impairment, or destruction for their benefit, enjoyment, and general welfare is inherent to the *jus publicum*"; (2) that "Plaintiffs have a constitutional right to life, liberty and property"; (3) that "Plaintiffs have an unenumerated liberty right to use an atmosphere, lands, and waters protected from pollution, impairment, or destruction for their benefit, enjoyment, and general welfare"; (4) that "sections 45.2-1602(1), (2), (5) and 45.2-1614(A)(1), (A)(2), (A)(4), (B)(6) in the Virginia Gas and Oil Act substantially impair[] Plaintiffs' *jus publicum* rights" and are therefore invalid; (5) that those provisions are unconstitutional because they violate Plaintiffs' substantive due process rights; (6) that these provisions also violate the Plaintiffs' unenumerated liberty rights; and (7) that the "Defendants' policy and practice of exercising their statutory discretion in favor of permitting fossil fuel infrastructure projects substantially impairs Plaintiffs' *jus publicum* rights"; (8) that the "Defendants' policy and practice of exercising their statutory discretion in favor of permitting fossil fuel infrastructure projects violates Plaintiffs' substantive due process rights to life, liberty, and property"; and (9) that the "Defendants' policy and practice of exercising their statutory discretion in favor of permitting fossil fuel infrastructure projects violates Plaintiffs' unenumerated liberty right[s]." The complaint also requested, "[i]f necessary and proper," injunctive relief, as well as the costs of suit, reasonable attorney's fees, and "such other and further relief as may be just and proper."

The Commonwealth filed a responsive pleading styled "Demurrer and Plea of Sovereign Immunity." The Commonwealth argued that Plaintiffs lacked standing because their alleged injuries were not justiciable, also argued that the relief Plaintiffs sought would not redress their alleged injuries, and also contended that the alleged injuries were not caused by the Defendants. The Commonwealth further argued that "Plaintiffs' articulation of" *jus publicum* rights is not

recognized under Virginia law. The Commonwealth further contended that judicial adjudication of Plaintiffs' claims would violate the separation of powers established by Article III, § 1 of the Constitution of Virginia. In addition, the Commonwealth alleged in its demurrer that the Due Process Clause in Article I, § 11 of the Constitution of Virginia does not contain a substantive due process component and that Virginia does not recognize the unenumerated environmental rights described by Plaintiffs in their briefs. The Commonwealth also argued in the trial court that sovereign immunity bars all of Plaintiffs' claims.

The trial court received extensive briefing from the parties on the issues raised by the Commonwealth's demurrer and plea of sovereign immunity, and it heard oral argument in a September 16, 2022 hearing. After considering the parties' written and oral arguments, the trial court entered an order on September 29, 2022, granting the Commonwealth's plea of sovereign immunity in its demurrer and dismissing the case with prejudice. The Plaintiffs now appeal the trial court's ruling to this Court.

## II. ANALYSIS

As the Supreme Court has stated, "The purpose of a demurrer is to determine whether a complaint states a cause of action upon which relief may be granted." *Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 488-89 (2011). A demurrer tests the legal sufficiency of a complaint, and in reviewing a trial court's ruling on a demurrer, this Court must assume the truth of facts alleged in the complaint and also reasonable inferences that can be drawn from those facts. *Morgan v. Bd. of Supervisors of Hanover Cnty.*, 302 Va. 46, 52 (2023); *Robinson v. Nordquist*, 297 Va. 503, 514 (2019). "We review a circuit court's decision on demurrer de novo." *Rafalko v. Georgiadis*, 290 Va. 384, 396 (2015). In addition, "We review de novo a trial court's ruling on a plea of sovereign immunity." *Pike v. Hagaman*, 292 Va. 209, 214 (2016) (citing *City of Chesapeake v. Cunningham*, 268 Va. 624, 633 (2004)). "We review de novo the question of

- 6 -

whether the appellants' factual allegations were sufficient to establish standing, as this issue presents a question of law." *Platt v. Griffith*, 299 Va. 690, 692 (2021).

On appeal, Plaintiffs assign error to the trial court's dismissal of this case on sovereign immunity grounds. Plaintiffs argue that the trial court's ruling renders their rights unenforceable. Plaintiffs also assign error to the trial court's "expanding the doctrine of sovereign immunity to apply to constitutional claims seeking equitable relief," to the trial court's finding that Article I, § 11 of the Constitution is not self-executing, and to the trial court's ruling "implicitly finding that Virginia's *jus publicum* is not self-executing, even when Plaintiffs' Complaint requests equitable relief and not damages."

### A. Sovereign Immunity

"[T]he doctrine of sovereign immunity is 'alive and well' in Virginia." *Fines v. Rappahannock Area Comm. Servs. Bd.*, 301 Va. 305, 313 (2022) (alteration in original) (quoting *Messina v. Burden*, 228 Va. 301, 307 (1984)). It has long been an "established principle of sovereignty" that the Commonwealth "cannot be sued in its own courts, or in any other, without its consent and permission." *Bd. of Pub. Works of City of Richmond v. Gannt*, 76 Va. 455, 461 (1882). As the Supreme Court has repeatedly stated, sovereign immunity serves an important role both to protect the public purse and to protect the orderly administration of government. *Gray v. Virginia Sec'y of Transp.*, 276 Va. 93, 101 (2008) (quoting *Messina*, 228 Va. at 307). In general, the doctrine provides that "the Commonwealth is immune from liability for damages and from suits to restrain governmental action or to compel such action." *Ligon v. Cnty. of Goochland*, 279 Va. 312, 316 (2010) (citing *Gray*, 276 Va. at 102). This includes, subject to certain exceptions, immunity from suits in equity and from suits seeking declaratory judgment. *Montalla, LLC v. Commonwealth, et al.*, ___ Va. ___, ___ (May 9, 2024); *Digiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 137 (2011); *Afzall v. Commonwealth*, 273 Va.

- 7 -

226, 231 (2007).  Not only is the Commonwealth entitled to this immunity, but so are agencies of the Commonwealth and, as relevant here, high-level government officials such as the ones named as defendants in this case.  *Gray*, 276 Va. at 102; *Alliance to Save the Mattaponi v. Commonwealth*, 270 Va. 423, 455 (2005).

Of course, the Commonwealth's sovereign immunity can be waived by provisions in the Constitution of Virginia, which is "the charter by which our people have consented to be governed."  *Town of Madison v. Ford*, 255 Va. 429, 432 (1998) (quoting *Coleman v. Pross*, 219 Va. 143, 152 (1978)).  The Supreme Court has been clear that "sovereign immunity does not preclude declaratory and injunctive relief claims based on self-executing provisions of the Constitution of Virginia."  *Digiacinto*, 281 Va. at 137 (citing *Gray*, 276 Va. at 104-07); *see Swift & Co. v. Newport News*, 105 Va. 108, 114-15 (1906).  A constitutional provision is "self-executing" if it is operative without any additional legislation from the General Assembly.  *Gray*, 276 Va. at 103; *Gill v. Nickels*, 197 Va. 123, 129 (1955); *see also Self-executing*, *Black's Law Dictionary* (11th ed. 2019) (defining the term "self-executing" as "effective immediately without the need of any type of implementing action").  In this context, "self-executing" means not only that the constitutional provision requires no further legislation to take effect but also that no statute is required to permit a lawsuit alleging a violation of the provision.  The Supreme Court has explained, "To give full force and effect to the provisions as self-executing, a person with standing must be able to enforce them through actions against the Commonwealth."  *Gray*, 276 Va. at 103.  Consequently, self-executing provisions of the Constitution waive the Commonwealth's sovereign immunity.  *Id.* at 106 ("We hold that Article I, Section 5; Article III, Section 1; and Article IV, Section 1 are self-executing constitutional provisions and thereby waive the Commonwealth's sovereign immunity."); *Digiacinto*, 281 Va. at 137.

Here, the Plaintiffs brought two claims based on Article I of the Constitution of Virginia – specifically the Due Process Clause in § 11 of the Constitution's Bill of Rights, and they argue that this provision is self-executing.[5] The Plaintiffs' argument on this point finds great support in recent caselaw. In late 2023 – after Plaintiffs noted their appeal to this Court – the Supreme Court issued its decision in *Vlaming v. West Point Sch. Bd.*, 302 Va. 504 (2023). In *Vlaming*, the Supreme Court reversed the trial court's dismissal of a teacher's Article I, § 11 procedural due process claim against a school board, thereby allowing the teacher's claim to proceed. *Vlaming*, 302 Va. at 580. Then, in early 2024, this Court issued its decision in *Ibanez v. Albemarle County School Board*, 80 Va. App. 169 (2024). In *Ibanez*, this Court applied precedent from the Supreme Court and held that the Due Process Clause of Article I, § 11 is self-executing and therefore waives the Commonwealth's sovereign immunity for claims seeking declaratory or injunctive relief.[6] *Ibanez*, 80 Va. App. at 190-92, 221, 239. This Court reached that conclusion by recognizing that the first paragraph of Article I, § 11, including the Due Process Clause, was situated in Virginia's Bill of Rights; it contained "negative prohibitions" against the government; and it provided clear rules for its enforcement – all factors which the Supreme Court has previously relied on to hold that certain constitutional provisions are self-executing. *Id.* at 191; *see Digiacinto*, 281 Va. at 137; *Gray*, 276 Va. at 105-06. Consistent with this recent, binding

---

[5] The Due Process Clause in § 11 of Virginia's Bill of Rights (Article I of the Constitution of Virginia) provides, "That no person shall be deprived of his life, liberty, or property without due process of law." Plaintiffs also cite to Article XI, § 1 of the Constitution in their briefs to this Court. For instance, Plaintiffs argue, "Article XI, Section 1 is only relevant to Plaintiffs' *jus publicum* claims because it defines the *scope* of their *jus publicum* rights—it does not provide the cause of action." Indeed, Plaintiffs cannot rely on that provision of the Virginia Constitution to prevail here because the Supreme Court has clearly stated, "We hold, therefore, that Va. Const. art. XI, § 1, is not self-executing." *Robb v. Shockoe Slip Found.*, 228 Va. 678, 683 (1985).

[6] Although the *Ibanez* decision consisted of three separate opinions, this Court was unanimous on the point that the due process provision in Article I, § 11 is self-executing. *Ibanez*, 80 Va. App. at 190-92, 221, 239.

precedent, we reiterate that the Due Process Clause of Article I, § 11 is self-executing. Therefore, properly pled claims for injunctive or declaratory relief brought under that clause of Article I, § 11 are not barred by sovereign immunity.[7]

While "respectfully preserv[ing] its position that Article I, Section 11 is not self-executing 'in this instance,'" the Commonwealth concedes that "*Ibanez*'s conclusion regarding Article I, Section 11 is binding at this stage." Instead, the Commonwealth argues that the trial court's decision should be affirmed under the right-result-wrong-reason doctrine, which it argues is also supported by *Ibanez*. Indeed, although this Court in *Ibanez* held that the circuit court there erred in finding that Article I, § 11 was not self-executing, a majority of the panel nevertheless applied the right-result-wrong-reason doctrine to affirm the circuit court's decision dismissing the complaint – and did so by relying on grounds raised in the school board's pleadings to decide that the plaintiff students and parents in that case lacked standing. *Ibanez*, 80 Va. App. at 188-94. Consistent with this Court's opinion in *Ibanez* and taking the facts alleged in the complaint as true, we review the grounds raised by the Commonwealth's demurrer to determine whether the trial court was correct in dismissing the Plaintiffs' case on one or more of those grounds. *Id.*; *see* Code § 8.01-273; *Cherrie v. Va. Health Servs. Inc.*, 292 Va. 309, 319

---

[7] Plaintiffs also argue that sovereign immunity does not apply to their two claims based on the common law doctrine of *jus publicum*. In making this argument, they rely heavily on *Commonwealth v. City of Newport News*, 158 Va. 521, 546 (1932), to assert that the *jus publicum* doctrine inherently overcomes the Commonwealth's sovereign immunity. However, the Supreme Court's opinion in that case does not discuss the sovereign's immunity from suit (and, in fact, does not mention "sovereign immunity" at all) – and the Supreme Court actually describes the *jus publicum* as a right of **the Commonwealth of Virginia**. *Id.* Plaintiffs further cite *Virginia Marine Resources Commission v. Chincoteague Inn*, 287 Va. 371, 383 (2014) – a case that likewise does not discuss sovereign immunity or find that the *jus publicum* waives sovereign immunity. Given that no statute or constitutional provision overcomes sovereign immunity for a *jus publicum* claim, the trial court here was correct to dismiss the Plaintiffs' *jus publicum* claims as barred by sovereign immunity.

(2016) (holding that "we have the authority to affirm the court's dismissal on any legal ground appearing in the record").

B. <u>Standing</u>

"Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Morgan*, 302 Va. at 58 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)). "The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case." *Westlake Props., Inc. v. Westlake Pointe Prop. Owners Ass'n, Inc.*, 273 Va. 107, 120 (2007)). Standing is a preliminary jurisdictional issue, and "an action filed by a party who lacks standing is a legal nullity." *Kocher v. Campbell*, 282 Va. 113, 119 (2011). Standing seeks to determine whether a plaintiff truly has "a personal stake in the outcome of the controversy." *Morgan*, 302 Va. at 58. Although a plaintiff can bring a lawsuit under the Declaratory Judgment Act (Code § 8.01-184 *et seq.*) before she suffers actual damage from a potential injury, that plaintiff must still satisfy the other requirements of standing. *Morgan*, 302 Va. at 58-67 (reviewing both whether the plaintiffs had standing and whether they satisfied the requirements under the Declaratory Judgment Act). Furthermore, while "the facts stated in the plaintiff's complaint are deemed true" for the purposes of this appeal, *Montalla*, ___ Va. at ___ n.3, "[w]e review de novo the question of whether the appellants' factual allegations were sufficient to establish standing, as this issue presents a question of law," *Platt*, 299 Va. at 692.

The doctrine of standing serves a number of important ends. "In its constitutional dimension, the concept of standing protects 'separation-of-powers principles' and 'prevent[s] the judicial process from being used to usurp the powers of the political branches.'" *Morgan*, 302 Va. at 58 (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017)). Indeed, "the standing requirement thwarts 'efforts to convert the Judiciary into an open forum for the

resolution of political or ideological disputes about the performance of government.'" *Id.* (quoting *United States v. Richardson*, 418 U.S. 166, 192 (1974) (Powell, J., concurring)).

The decisions of the Virginia Supreme Court across a wide array of legal disputes have stressed several elements in evaluating standing questions. First, standing ordinarily requires "a direct interest, pecuniary or otherwise, in the outcome of the controversy that is separate and distinct from the interest of the public at large." *Goldman v. Landsidle,* 262 Va. 364, 371-73 (2001); *McClary v. Jenkins*, 299 Va. 216, 222 (2020); *see Westlake*, 273 Va. at 120; *Platt*, 299 Va. at 692. This depends on showing an injury that is distinct from a mere policy disagreement or indirect effects shared by the public generally. *See Goldman*, 262 Va. at 371-72; *McClary*, 299 Va. at 222. In other words, not only must the injury be "concrete," it must also be "particularized." *Morgan*, 302 Va. at 64-65. As the Court has also clearly stated, "Merely advancing a public right or redressing a public injury cannot confer standing on a complainant." *Wilkins v. West*, 264 Va. 447, 458 (2002).

Second, a plaintiff must also show that her injury was caused by the defendant's actions. *Morgan*, 302 Va. at 64. The Court has explained, "Borrowing language from the United States Supreme Court's seminal opinion in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560[ ] (1992), we agree that standing requires particularized harm to 'be fairly traceable to the challenged action of the defendant.'" *Morgan*, 302 Va. at 64 (quoting *Mattaponi Indian Tribe v. Virginia Dep't of Env't Quality ex rel. State Water Control Bd.*, 261 Va. 366, 376 (2001)); *see Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 166 n.3 (2022) (citing *Lujan*, 504 U.S. at 555). The "'fairly traceable' requirement" is important because it "ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Philip Morris USA, Inc. v. Chesapeake Bay Found., Inc.*, 273 Va. 564, 579 (2007) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000)).

A third requirement of standing is that the court must be able to redress the plaintiff's claimed injuries. *Spanos v. Taylor*, 76 Va. App. 810, 826 (2023); *see Lujan*, 504 U.S. at 561. The Supreme Court has also stated that standing "requires an injury that 'will likely be redressed by a favorable decision by the court.'" *Philip Morris*, 273 Va. at 579 (quoting Code § 62.1-44.29(iii) and citing *Lujan*, 504 U.S. at 561).[8] "Standing is limited to injuries where a court may reasonably be expected to find a remedy," and that remedy, even if not a total solution, must be "enough to be able to address the harms of the named defendants." *Id.* Redressability that supports standing, as the Supreme Court has clearly explained, is "such that a plaintiff 'personally would benefit in a tangible way from the court's intervention.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)).

Here, the Plaintiffs' alleged injuries described in their opening brief to this Court include heat exhaustion, heat rash, tick bites which resulted in diagnoses of Lyme disease and alpha-gal syndrome, lower garden yields, reduced access to shellfish and certain recreational activities, and mental health injuries (such as "stress, depression, anxiety, and PTSD"). As their complaint makes clear, however, these are only instances of their larger concern of climate change:

> Increasing temperatures from climate change are physically harming Layla. . . . Climate change is contributing to the rapid spread of blacklegged ticks (*Ixodes scapularis*) to Southwest Virginia, and in the summer of 2021, Cedar contracted Lyme disease from a tick in the woods behind his house. . . . Anthropogenic climate change is projected to worsen coastal flooding over the coming decades along Virginia's extensive 10,000 miles of shoreline. . . . Climate change is increasing the length and severity of droughts in Virginia, reducing soil moisture and water needed for crop irrigation. . . . Extreme weather events, including extreme precipitation and hurricanes, are increasing in Virginia due to anthropogenic climate change. . . . The impacts from the climate crisis, including heat waves, droughts, air

---

[8] In *Philip Morris*, 273 Va. at 576, the Virginia Supreme Court applied the U.S. Supreme Court's constitutional standing analysis, pursuant to Code § 62.1-44.29(iii). The Supreme Court has also very recently applied *Philip Morris* and its standing principles more broadly. *See Morgan*, 302 Va. at 64; *Platt*, 299 Va. at 692; *see also McClary*, 299 Va. at 222.

pollution, violent storms and extreme weather events, flooding, loss of coastal areas, and loss of familial and cultural foundations and traditions, also lead to mental health problems in children, like stress, depression, anxiety, suicidality, or PTSD.

The Plaintiffs' complaint asserts, "Stabilizing the climate system requires reducing Earth's energy imbalance to near zero" and that achieving net-zero emissions "will require eliminating nearly all (greater than 90 percent) of Virginia's fossil fuel use." It further asserts that "it is technically feasible and cost-effective to decarbonize all sectors of Virginia's energy system (electric power, transportation, industrial, commercial, and residential) by mid-century." Doing so, the complaint states, would achieve the goal of "addressing the negative impacts of the climate crisis."

What is plain from the Plaintiffs' complaint is that they claim injuries caused by a worldwide issue that would require a broad policy solution to address. Plaintiffs' own theory is that climate change presents a crisis affecting not only everyone in Virginia but everyone in the world, and the connection they posit between the actual injuries they allege – both to themselves and everyone else – is highly indirect, an unintended downstream consequence of what they argue have been long-term mistaken policy choices. Rather than establishing the necessary particularized injury, Plaintiffs' complaint presents exactly the kinds of general policy disagreements that "fall within the purview of the General Assembly." *Daily Press, LLC v. Office of the Exec. Sec'y*, 293 Va. 551, 557 (2017); *Infants v. Va. Hous. Dev. Auth.*, 221 Va. 659, 671 (1980). Under the Constitution of Virginia, the judicial branch – including this Court – is expressly prohibited from exercising a legislative role. Va. Const. art. III, § I (the "legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers belonging to the others"); *Wood v. Bd. of Supervisors*, 236 Va. 104, 115 (1988) ("It is the responsibility of the legislature, not the judiciary, to formulate public policy."). The doctrine of

- 14 -

standing serves to preserve the constitutional separation of powers by barring judicial resolution of such generalized grievances.

In addition, the global nature of the climate issue that Plaintiffs claim has caused their injuries demonstrates how they cannot show the causality and redressability necessary to establish standing in this case. Plaintiffs' complaint alleges, "Defendants' longstanding policy and practice of permitting fossil fuel infrastructure, including the production, transport, and burning of fossil fuels, has, and continues to, cause dangerous levels of GHG [greenhouse gas] pollution which cause and contribute to the climate crisis." While for the purposes of this appeal "the facts stated in the plaintiff's complaint are deemed true," *Montalla*, ___ Va. at ___ n.3, we extend no presumption of correctness, as the Supreme Court has stated, to "conclusions of law camouflaged as factual allegations or inferences," *Morgan*, 302 Va. at 52 (quoting *Doe ex rel. Doe v. Baker*, 299 Va. 628, 641, (2021)).

The Commonwealth points out that the Plaintiffs' alleged causal chain involves a series of at least six steps, where (1) the Commonwealth approves a permit to produce, transport or burn fossil fuels; (2) third parties use those permits to build facilities; (3) the operations of those facilities result in greenhouse gas emissions; (4) those emissions incrementally contribute to world-wide greenhouse gas emissions that ultimately cause global climate change; (5) global climate change affects local weather conditions; and (6) those weather conditions result in heat waves, sea level rise, or droughts which then cause the Plaintiffs' injuries. The Commonwealth notes that Plaintiffs' claims here are similar to those in *Center for Biological Diversity v. United States Department of the Interior*, 563 F.3d 466 (D.C. Cir. 2009), where the U.S. Court of Appeals for the District of Columbia Circuit held that the causal link between allegations of

- 15 -

climate change and the challenged governmental policy was "too tenuous" to satisfy the requirement of standing. *Id.* at 478.[9]

Reading Plaintiffs' complaint in the best possible light, there is simply no basis to the claim that the Commonwealth's policies of approving permits for certain facilities (which, as Plaintiffs allege, is done pursuant to statutes passed by the General Assembly) are responsible for the heat rash, tick bites, reduced shellfish stocks, diminished access to places of recreation, and other injuries that Plaintiffs allege. While the traceability requirement does not mean that the defendant's actions are the very last step in the chain of causation, standing does require "a genuine nexus" connecting the Plaintiff's injuries to the actions they challenge. *Philip Morris*, 273 Va. at 579; *see also Platt*, 299 Va. at 692 (stating that "a remote or indirect interest" is insufficient (quoting *Westlake*, 273 Va. at 120)). As the Supreme Court has stated, standing requires a plaintiff to show "a direct interest, pecuniary or otherwise, in the outcome of the controversy that is separate and distinct from the interest of the public at large." *Goldman*, 262 Va. at 371-73; *McClary*, 299 Va. at 222. Plaintiffs have failed to make that showing here.

---

[9] The U.S. Court of Appeals for the District of Columbia Circuit, in explaining its decision that the plaintiff petitioners there did not have standing to sue because they had not adequately established causation, went on to state:

> In order to reach the conclusion that Petitioners are injured because of Interior's alleged failure to consider the effects of climate change with respect to the Leasing Program, Petitioners must argue that: adoption of the Leasing Program will bring about drilling; drilling, in turn, will bring about more oil; this oil will be consumed; the consumption of this oil will result in additional carbon dioxide being dispersed into the air; this carbon dioxide will consequently cause climate change; this climate change will adversely affect the animals and their habitat; therefore Petitioners are injured by the adverse effects on the animals they enjoy.

*Ctr. for Biological Diversity*, 563 F.3d at 478-79.

Finally, given the global nature of the climate change issue, Plaintiffs have not shown that they "personally would benefit in a tangible way from the court's intervention." *Philip Morris*, 273 Va. at 579 (quoting *Warth*, 422 U.S. at 508). In short, Plaintiffs have not shown that they would receive a tangible benefit simply from a judgment declaring unconstitutional the challenged portions of the Virginia Gas and Oil Act or the Commonwealth's policies pursuant to that Act. Even if we were to conclude that such a claim could be inferred from portions of the complaint, that inference would be contradicted by the complaint's other, explicit allegations that addressing the negative impacts of climate change would require a *global* reduction in greenhouse gas emissions and "reducing Earth's energy imbalance to near zero." According to the complaint, climate change is a global phenomenon and it is affected by actors around the world – nearly all of whom are not a party to this case. Plaintiffs' complaint does not establish that any remedy that a Virginia court could arguably grant against the Defendants here would have any true impact on Plaintiffs' alleged injuries. Consequently, Plaintiffs have not shown that their claimed injuries are redressable by the court's intervention in this case. *See Platt*, 299 Va. at 692-93; *Philip Morris*, 273 Va. at 579. Even taking all the allegations in the complaint as true, redressing Plaintiffs' injuries would require global policy changes that our courts simply do not have the capability or jurisdiction to grant here.

## III. CONCLUSION

The circuit court dismissed the Plaintiffs' complaint by ruling that their claims were barred by sovereign immunity. However, binding precedent (that was issued after the circuit court made its ruling below) makes clear that the circuit court was incorrect to rule that Plaintiffs' claims based on Article I, § 11 are barred by sovereign immunity. *See Vlaming*, 302 Va. at 580; *Ibanez*, 80 Va. App. at 191-92. The circuit court, however, was correct to dismiss the *jus publicum* claims in the complaint as barred by sovereign immunity because no constitutional

- 17 -

or statutory provision waives sovereign immunity for *jus publicum* claims. *See Afzall*, 273 Va. at 230. Although sovereign immunity does not bar Plaintiffs' Article I, § 11 claims, we affirm the judgment of the circuit court dismissing this case because, as the Commonwealth argued in its demurrer, Plaintiffs' complaint has not shown the necessary requirement that Plaintiffs actually have standing to maintain a suit against the Commonwealth here.[10] *See Platt*, 299 Va. at 692; *Ibanez*, 80 Va. App. at 188 n.8; *Cherrie*, 292 Va. at 318-19. Furthermore, standing is a preliminary jurisdictional issue that is an absolutely indispensable part of a plaintiff's case. *Morgan*, 302 Va. at 58; *Seymour*, 301 Va. at 166 n.3. Indeed, as the Supreme Court has repeatedly held, "[A]n action filed by a party who lacks standing is a legal nullity." *McClary*, 299 Va. at 221 (quoting *Kocher v. Campbell*, 282 Va. 113, 119 (2011)). Therefore, given that Plaintiffs lack standing, the circuit court properly dismissed their complaint.

For all of the foregoing reasons, we affirm the judgment of the Circuit Court of the City of Richmond dismissing the Plaintiffs' complaint with prejudice.

*Affirmed*.

---

[10] In addition to raising sovereign immunity and standing issues, the Commonwealth's demurrer also raised other grounds to dismiss the complaint, such as arguing that the Due Process Clause of Article I, § 11 does not have a substantive due process component. *See Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 585 (2017) (McCullough, J., concurring). However, we do not need to reach any additional grounds here because we are deciding this case on the narrowest and best grounds that Plaintiffs simply do not have standing. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("As we have often said, '[t]he doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available.'" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).